## Bonnell *v.* The State.

Criminal Law.—*Verdict.—Acquittal.*—A verdict of guilty as charged in one only of several counts in an indictment is, in effect, an acquittal on the other counts.

Same.—*False Pretences.—Indictment.—False Report by Employee to Employer. —Personating Fictitious Person.—Negligence of Agent.—Character of Pretences Used.*—An indictment against the "foreman of a gang of hands" laboring for the receiver of a railroad company charged the defendant with having made a false report, in writing, that a certain fictitious person was entitled to a certain sum for labor performed for the receiver as one of such "gang," and with having procured another to personate such fictitious person and receive from the paymaster of the receiver, of the moneys of the receiver, the amount due to such fictitious person as shown by the pay-roll which was founded upon, and made out pursuant to, and upon the faith of, such false report, with felonious intent to defraud, etc.

Held, that such an indictment is fatally defective for want of an averment that it was the duty of the defendant to employ such laborers for the receiver, and that such duty was known to the persons to whom he reported, and to those whose duty it was to prepare the pay-roll.

Held, also, that a payment, by the paymaster, to him personating such fictitious person, without identification, was negligence with which the receiver was chargeable.

Same.—*False Pretences in Obtaining Check.—Description of Check in Indictment.*—An indictment for obtaining a check calling for the payment of money, by means of false pretences, should describe the check by setting out its substance, at least, or allege a substantial reason for the failure to do so.

From the Jennings Circuit Court.

*T. C. Batchelor*, for appellant.

*T. W. Woollen*, Attorney General, and *W. G. Holland*, Prosecuting Attorney, for the State.

Howk, C. J.—At the March term, 1878, of the Jennings Circuit Court, the appellant was indicted for obtaining a certain thing of value by certain false pretences.

The indictment contained two counts.

The appellant moved the court to quash the indictment, which motion was overruled, and to this ruling he excepted. On arraignment, his plea to the indictment was, that he was not guilty as therein charged.

The cause was tried by a jury, and a verdict was returned finding him guilty as charged in the first count of the indictment, and assessing his fine at one cent; and that he be imprisoned in the state-prison for the term of two years.

His motion for a new trial having been overruled, and his exception entered to this decision, judgment was rendered against him by the court, upon and in accordance with the verdict.

From this judgment he has appealed to this court, and has here assigned, as errors, the following decisions of the circuit court:

1. In overruling his motion to quash the indictment; and,

2. In overruling his motion for a new trial.

1. In considering the questions arising under the first alleged error, it will be observed that the verdict of the jury was entirely silent as to the second count of the indictment. This silence of the verd˙ was equivalent to an express verdict of not guilty as to the second count of the indictment. *Weinzorpflin* v. *The State*, 7 Blackf. 186, and, *Bittings* v. *The State*, 56 Ind. 101. It follows, therefore, that the only question for decision, under the first alleged error, is the sufficiency in law of the first count of the indictment.

- Omitting merely formal and introductory matters, the first count of the indictment charged, in substance, that

the appellant, Charles D. Bonnell, "from the 1st day of August, 1877, until the 15th day of September, 1877, was in the employment and service of John King, Jr., who was then, and during all of said time, the receiver of the Ohio and Mississippi Railway Company, and was then and there, and during all of said time, a part of the business and duty of said Charles D. Bonnell to act and be the foreman of a gang of hands and carpenters, engaged in work under his charge, for said John King, Jr., as such receiver, on the main line of said railway from Osgood to Mitchell, and on the branch line of said railway from North Vernon to Louisville; that, among other things, it was the duty and business of said Charles D. Bonnell, in that behalf, to keep a correct list of the hands in his gang, the number of days each was engaged in labor on said railway, the rate of wages at which each worked, and to make weekly and monthly reports thereof, showing the whole number of days each had worked, at the end of each month, and the total amount due each of said hands for labor on said railway during said month, which said reports the said Charles D. Bonnell, as such foreman, had to make to one Enoch S. Duval, who was, during all of said time aforesaid, also in the employment of said John King, Jr., as such receiver, and whose business it was, in part, to receive and approve the said reports required of the said Charles D. Bonnell, and forward them, with his approval, to one Samuel R. Johnson, who was also, during all of the time aforesaid, in the employment of said John King, Jr., as such receiver, whose business it was to make out, from said reports aforesaid, the pay-rolls for the said gang of hands under the foremanship of the said Charles D. Bonnell, and forward said pay-rolls to one Andrew Donaldson, who was also, during all of the time aforesaid, in the employment of said John King, Jr., as such receiver, and whose business it was to pay to each of the said hands in said

gang the amount so shown to be due to them. And the grand jury further find and present, that, during the said month of August, 1877, the said Charles D. Bonnell did make said weekly and monthly reports, as he was required to do as such foreman, of the time worked by each hand in his said gang of hands, on the said railway, to the said Enoch S. Duval, and in each of said reports the name of 'W. S. Jones' was made to appear by said Charles D. Bonnell as one of the hands in said gang. Particularly did the said Charles D. Bonnell make a monthly report thereof to the said Enoch S. Duval, in the said county of Jennings, on the 31st day of August, 1877 ; and the said grand jury presents, that, in the said monthly report, the said Charles D. Bonnell did then and there and thereby unlawfully, feloniously, designedly and with intent to defraud the said John King, Jr., as such receiver, falsely, designedly and intentionally place in said report the name 'W. S. Jones,' and did thereby report that the said 'W. S. Jones' had worked in the gang on said railway for seventeen days, during said month of August, A. D. 1877, and that his total wages was $34.51, which said report was received and approved by the said Enoch S. Duval, who confided in and believed said report to be true, and who then and there well knew that the said Charles D. Bonnell was so in the employment, in the capacity of such foreman, of the said John King, Jr., as such receiver ; that said Enoch S. Duval then forwarded the said report to the said Samuel R. Johnson, who then and there confided in and believed each of said reports to be true, well knowing that the said Charles D. Bonnell and the said Enoch S. Duval were each in the service, as aforesaid, of the said John King, Jr., as such receiver ; that the said Samuel R. Johnson then made up the said pay-roll for the said gang of hands, including the said name of the 'W. S. Jones,' upon the faith reposed in said reports, and forwarded the same to the said Andrew

Donaldson, who knew that the said Charles D. Bonnell, the said Enoch S. Duval, and the said Samuel R. Johnson were, during all of said time, in the employment of said John King, Jr., as such receiver, and, so knowing, the said Andrew Donaldson believed the said pay-roll to be correct, and gave full faith and credit to the said pay-roll made from the said reports, by which it was shown that the said John King, Jr., as such receiver, was indebted to 'W. S. Jones,' as aforesaid, in the sum of $34.51. ·And the grand jury aforesaid further find and present, that, in truth and in fact, there was no such man as 'W. S. Jones' in the gang of hands under the direction of the said Charles D. Bonnell, as such foreman, during the whole or any part of the said month of August, A. D. 1877, nor was there any man in said gang, during said time, who answered to the name of 'W. S. Jones,' but that the said 'W. S. Jones' was sham and fictitious, and inserted and carried on said reports by said Charles D. Bonnell, as such foreman, designedly and with the intent to defraud the said John King, Jr., receiver as aforesaid.    And the grand jury further present, that, in furtherance of the said intent and design of the said Charles D. Bonnell to defraud the said John King, Jr., as such receiver, the said Charles D. Bonnell, at the said county of Jennings, in the State · of Indiana, and on the 15th day of September, A. D. 1877, did then and there procure one Lon King to personate and represent himself to be the said 'W. S. Jones,' named and represented, as aforesaid, in the reports of the said Charles D. Bonnell, as aforesaid, and the said Lon King, in obedience to the request and commands of the said Charles D. Bonnell, did then and there, for and on behalf of the said Charles D. Bonnell, present himself to the said Andrew Donaldson, paymaster, as aforesaid, for the said John King, Jr., receiver as aforesaid, and represent himself to the said Andrew Donaldson to be 'W. S. Jones,' and did then and

there, and in that assumed character, and in obedience to the instructions given him by the said Charles D. Bonnell, as aforesaid, then and there receive from the hands of the said Andrew Donaldson, for and on behalf of the said Charles D. Bonnell, as such paymaster, the check of the said John King, Jr., as such receiver, upon the 'Commercial Bank, of Cincinnati,' for the sum of $34.51, which check was then and there of the value of $34.51. Wherefore the grand jury say, that, in reporting the said fictitious 'W. S. Jones' upon his weekly and monthly rolls, as aforesaid, representing that the said receiver aforesaid was indebted to the said ' W. S. Jones,' in form as aforesaid, and in procuring the said Lon King to aid him in perfecting the said fraud, in form aforesaid, in obtaining the check aforesaid, as aforesaid, the said Charles D. Bonnell was then and there guilty of obtaining from the said John King, Jr., receiver as aforesaid, his check on the 'Commercial Bank of Cincinnati,' for $34.51, and then and there of the value of $34.51, with the intention, then and there and thereby, to feloniously and designedly defraud the said John King, Jr., receiver of the said Ohio and Mississippi Railway Company, contrary to the form of the statute made and provided."

It will be readily seen from the indictment in this case, that it was intended to charge the appellant, therein and thereby, with the commission of the felony which is defined, and the punishment therefor prescribed, in and by section 27 of "An act defining felonies, and prescribing punishment therefor," approved June 10th, 1852. In said section 27 it is provided as follows :

" Sec. 27. If any person, with intent to defraud another, shall designedly, by color of any false token or writing, or any false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, transfer, note, bond or receipt, or thing of value ;

such person shall, upon conviction thereof, be imprisoned in the state-prison not less than two nor more than seven years, and fined not exceeding double the value of the property so obtained." 2 R. S. 1876, p. 436.

We pass now to the consideration of the objections urged by the appellant's counsel to the sufficiency of the indictment. We will consider and pass upon the objections, in the same order in which they have been presented.

In his brief of this cause, the appellant's counsel says : " It will be observed, that the indictment nowhere charges, in express terms or by implication, that it was any part of the duty or business of the defendant, Bonnell, to *employ* the members of his gang, for John King, Jr., receiver, in the one case, or for the Ohio and Mississippi Railway, in the other. Now, unless the designation of the defendant's duty, under the term ' foreman,' implies the power and duty to employ the members of his gang, then not only is there no averment that such was a part of his duty, but the fair inference is that it was no part of his duty, that inference being drawn from the use of the word ' foreman.' "

This objection to the indictment is well taken. The term " foreman," as used in the indictment, does not imply, *ex vi termini*, that it was the duty of the appellant, or that he had the power, simply as foreman of a gang of laborers, to employ the laborers, or any of them, over whom he acted as foreman. If it was his duty, and if he had the power, as such foreman, to employ the laborers who constituted his gang, over whom he was placed as foreman, and of whom, and of the number of days each of them worked, and of the rate of wages each was entitled to, he was required to keep a correct list, and make weekly and monthly reports thereof, it is quite clear, we think, that it should have been alleged in the indictment, that such was

his duty and such was his power in the premises. And coupled with the foregoing allegation, it should have been charged in the indictment, that each of the officers or agents of said John King, Jr., receiver, etc., through whose hands the appellant's weekly and monthly reports were required to pass, knew that it was the duty of the appellant, and that he was authorized, to employ the laborers in his gang; and that, for this reason, each of the said officers or agents had the right to rely, and did rely, upon said weekly and monthly reports for information, as well as to the names of the laborers in the appellant's gang, as to the number of days each had worked, and the rate of wages each was entitled to.

It was not the appellant's duty, and if he had no power to employ the laborers in his gang, the fair and reasonable inference would be that such duty was incumbent upon, and such power was possessed by, some other agent or agents, servant or servants of said John King, Jr., receiver; and, in that event, it would seem to be reasonable, that such other agent or agents, or servant or servants, should keep true and correct lists of the persons so employed by him or them, the date of their employment, and of such other particulars, including their names, as would clearly identify them, and should examine and verify the weekly and monthly reports of the foreman of a gang of laborers, before any payment should be made to any of such laborers. It seems to us, that, in a great enterprise like the Ohio and Mississippi Railway, extending for hundreds of miles through and into four of the largest States of the Union, and whose agents and servants are numbered by the thousand, there should be some officer, agent or servant clothed with the duty, and possessed of the power, to employ the necessary laborers, and keep registers or rolls of their names, and of other proper particulars in regard to them. If the appellant was clothed with this duty, and

possessed of this power, in regard to the gang of laborers of which he was foreman, the fact should have been alleged in the indictment. But if, on the contrary, the appellant was not, and some other officer, agent or servant was, clothed with such duty and possessed of such power, then it seems to us, that common prudence would have required that the appellant's weekly and monthly reports should have been referred to such other officer, agent or servant for examination, verification and identification of the laborers named in said reports, before any pay-roll was made up therefrom.

It is the settled law in this State, that, in such a case as the one now before us, the false pretences upon which the indictment is predicated, must be such as would deceive a person of ordinary caution and prudence. "The pretences must be of some existing fact, made for the purpose of inducing the prosecutor to part with his property, and to which a person of ordinary caution would give credit." *The State* v. *Magee*, 11 Ind. 154; *Johnson* v. *The State*, 11 Ind. 481; *The State* v. *Orvis*, 13 Ind. 569; *Jones* v. *The State*, 50 Ind. 473; *Keller* v. *The State*, 51 Ind. 111; and *Clifford* v. *The State*, 56 Ind. 245.

In the case at bar it will be observed, that the indictment charged, that the appellant procured " one Lon King to personate and represent himself to be the said ' W. S. Jones,' " the fictitious name and person mentioned in the appellant's weekly and monthly reports. Now, it may be presumed, that Andrew Donaldson, the paymaster of said John King, Jr., receiver, did not know " W. S. Jones," the fictitious person, or Lon King, the real person, who was to personate and represent himself to be " W. S. Jones." If the paymaster, Donaldson, who was the servant, and, for the time being, was the representative, of John King, Jr., receiver, did not personally know " W. S. Jones," the fictitious person, nor Lon King, who personated

" Jones " for the time being, in the matter now under consideration, we are clearly of the opinion, that the paymaster, Donaldson, was guilty of negligence, in delivering to said Lon King, without identification of any kind, and especially without identification by the appellant, as foreman, of the check for thirty-four dollars and fifty-one cents, prepared for and in the name of " W. S. Jones." Of course the negligence of the servant, Donaldson, in this particular, must be regarded as, and held to be, the negligence of the principal, John King, Jr., receiver. It was not claimed nor charged in the indictment, that the appellant had in any manner, to the paymaster, Donaldson, or to any other person, represented the said Lon King to be the fictitious person, " W. S. Jones." The act of Donaldson, the paymaster, in delivering the check for " W. S. Jones " to Lon King, was the act of his principal, John King, Jr., receiver, the prosecutor of the appellant in this suit. It was, as we have seen, a negligent act. If the paymaster, Donaldson, had possessed and used ordinary caution and prudence. in the transaction of his duty and business, we may fairly and reasonably assume, the contrary not appearing, that the check prepared for and in the name of " W. S. Jones" would have never been delivered to Lon King. The false representation made by Lon King, and his false impersonation of the fictitious " W S. Jones," under the circumstances and surroundings of the transaction, ought not to have deceived any person of ordinary caution or prudence, and ought not to have induced John King, Jr., receiver, or his servant and paymaster, Donaldson, in the absence of any investigation and without any enquiry of any kind, to have parted with the check, made and prepared for " W. S. Jones," to an absolute and total stranger, Lon King, upon his naked and unsupported declaration that he was " W. S. Jones."

We are clearly of the opinion, that the false pretences of

the appellant, upon which the indictment against him is predicated in this case, were not of such a character, as the same are stated and set forth, and without other and further allegations, in the indictment, as would or ought to induce a person of ordinary caution and prudence to part with his property to an utter stranger, merely upon his declaration that his name was "W. S. Jones," and without any reference, voucher or even enquiry as to his identity. It seems to us, that the loss of property, by the prosecutor in this case, was the result rather of his own negligence in the transaction than of any false pretenses by or of the appellant.

In the case of *Smith* v. *The State*, 33 Ind. 159, the doctrine was laid down, and we think correctly, upon the authority there cited, " that the property obtained under a false pretence must be described with as much accuracy and particularity as goods stolen must be in an indictment for larceny." In the case at bar, the property alleged to have been obtained for and on behalf of the appellant, from the hands of the paymaster, Donaldson, by means of the false pretences charged in the indictment, was described therein as follows :

" The check of the said John King, Jr., as such receiver, upon the ' Commercial Bank of Cincinnati,' for the sum of $34.51, which check was then and there of the value of $34.51."

It will be observed, that the indictment contained no allegation of the loss or destruction of the check in question, nor was it alleged therein that the contents of said check were unknown to the grand jury, nor was any reason or excuse given for not setting out the substance of the check, nor was it stated, that, for any cause, a more particular description of the check could not be given, than was given in the indictment. Under these circumstances it is very certain, we think, that the check alleged to have been ob-

tained, for and on behalf of the appellant, by means of the false pretences charged in the indictment, was not described therein with sufficient accuracy and particularity, to conform to the requirements of law.  If the check was in existence, and in the possession or under the control of the prosecutor, the substance thereof should have been set out in the indictment.  If the check had been lost or destroyed, or if for any reason the substance thereof could not be set out, the facts in regard to it, and the contents of the check, should have been given in the indictment, as clearly and fully as they could be ascertained by the grand jury; and if they, or any of them, were unknown to the grand jury, that fact should have been stated in the indictment.  In this case, the check charged to have been obtained by means of the alleged false pretences was described with exceeding vagueness, inaccuracy and uncertainty.  The amount and value of the check, and the bank upon which it was drawn, are stated with certainty, but the indictment contains no other particulars in regard to said check.  Its date is not given, nor was it alleged therein whether it was payable to bearer, or to order, or to a certain named person, and if so, to whom it was made payable.  Indeed, from the description given of the check, it is not absolutely certain by whom it was made or executed.  It is described as " the check of the said John King, Jr., as such receiver."  It is certain, from this description, that the check was the property of " the said John King, Jr., as such receiver," but it does not necessarily follow, from the description given, that the check was made or executed by " the said John King, Jr., as such receiver."  For, it is clear that a check made or executed by some other person might have become, in the regular course of business, the property, and therefore " the check, of the said John King, Jr., as such receiver." From what we have said, it will be readily seen that the property charged to have been obtained, under or by means

of the alleged false pretences, was not described with any sufficient accuracy or particularity in the indictment in this case.

In another view of the question, it seems to us that the defective description of the check injuriously affected the indictment in this case. Of course it is necessary, in a case of this character, that the indictment should show, clearly and beyond doubt, that, by means of the false pretences charged therein against the defendant, the prosecutor has suffered some loss. In this case it is charged in the indictment that Lon King, for and on behalf of the appellant, obtained from the paymaster, Donaldson, a check for $34.51, but it is not alleged to whom this check was made payable. It was not alleged that the check thus obtained was a check made and prepared and intended for the fictitious " W. S. Jones ;" indeed, it was not alleged in terms, but is left merely to inference, that the check in question, obtained by Lon King for and on behalf of the appellant, was not made, prepared and intended for the appellant, and payable to him or his order. If the substance of the check had been set out, or if it had been fully described, or its contents given, in the indictment, it might then have appeared therein whether or not Lon King had obtained for the appellant the check made, prepared and intended for the fictitious " W. S. Jones, " and not for the appellant. But, in the absence of the substance of the check, or of its contents, and of any averments to that effect in the indictment, we cannot assume or infer that the check, obtained by Lon King for the appellant, was a check not intended for the appellant, but one made, prepared and intended for the fictitious " W. S. Jones," if there was any such check.

For the reasons given, we think that the circuit court erred in overruling the appellant's motion to quash the indictment.

The conclusion we have reached, in regard to the insuf-

ficiency of the indictment in this case, renders it unnecessary for us to consider any of the questions arising under the second alleged error, the overruling of the appellant's motion for a new trial. The evidence on the trial is not in the record, and, in the absence of the evidence, it is difficult to determine satisfactorily the appellant's objections to the instructions of the court, as mere abstract legal propositions.

The judgment is reversed, and the cause remanded, with instructions to sustain the appellant's motion to quash the first count of the indictment; and the clerk of this court will issue the proper notice for the return of the appellant to the sheriff of Jennings county.