STATE, EX REL. LOPEZ *v.* KILLIGREW ET AL.

[No. 25,952. Opinion denying rehearing filed February 20, 1931.]

*Russell B. Harrison* and *Milton L. Clawson*, for appellant.

*James M. Ogden*, Attorney-General, and *Earl B. Stroup*, Deputy Attorney-General, for the State.

TREANOR, J.—The relator herein filed his verified complaint asking that a writ of mandate issue out of this court commanding and directing the defendants in their official capacities respectively to allow the relator to file in the criminal court of Lake County his verified petition

for a writ of error *coram nobis*. An alternative writ of mandate was granted, and, after answer by defendants herein, the writ of mandate was made permanent without opinion. The defendants now file a petition for a rehearing, insisting that this court erred in holding that relator was entitled to file his petition for a writ of error *coram nobis* in the criminal court of Lake County, and in making the alternative writ of mandate permanent. Defendants' petition and supporting brief have raised questions as to the practice applicable to petitions for writs of error *coram nobis;* and also have raised collateral questions as to the legal effect of granting the writ, especially as related to a new trial. In view of the importance of clarifying the points of practice involved and of pointing out certain legal effects of granting a writ of error *coram nobis*, we feel that our action on defendants' petition for a rehearing should be accompanied by an opinion.

The writ of error *coram nobis* is a recognized remedy of our legal procedure. *Berry* v. *State* (1930), *ante* 294, 173 N. E. 705; *Shock* v. *State* (1929), 200 Ind. 469, 164 N. E. 625; *Davis* v. *State* (1927), 200 Ind. 88, 161 N. E. 375; *Partlow* v. *State* (1922), 191 Ind. 657, 134 N. E. 483; Id., 194 Ind. 172, 141 N. E. 513; *Trattner* v. *State* (1916), 185 Ind. 188, 113 N. E. 243; *Wheeler* v. *State* (1902), 158 Ind. 687, 63 N. E. 975; *Sanders* v. *State* (1882), 85 Ind. 318, 44 Am. Rep. 29; V. Ind. Law Jour. 603. The Constitution of Indiana requires that all courts shall be open and that "every man, for injury done him in his person, property or reputation shall have remedy by due course of law." The writ of error *coram nobis* is a part of our "due course of law"; the criminal court of Lake County has jurisdiction over the subject-matter of a petition for a writ of error *coram nobis* and the relator is as much entitled to file his petition for a writ of error *coram nobis* as he is

to file a complaint in a civil action in a court of competent jurisdiction. "A party has the legal right to bring his action in any court which has jurisdiction of the subject matter and which can obtain jurisdiction of the parties." *Illinois Life Ins. Co.* v. *Prentiss* (1917), 227 Ill. 383, 115 N. E. 554, cited in 15 C. J. 735. When a court has jurisdiction over a class of cases and one seeking relief invokes the jurisdiction of the court in the manner prescribed by law, the particular cause is, *ipso facto*, under the jurisdiction of the court and the court cannot refuse jurisdiction.

A judge can, however, refuse to exercise jurisdiction, and the denial of permission to the relator to file his petition in the criminal court of Lake County amounted to a refusal by the judge of that court to exercise jurisdiction. It is analogous to a refusal to allow a defendant to file a motion for a new trial. The writ of mandate was relator's proper, and only, remedy; *State, ex rel.,* v. *Smith* (1903), 69 Ohio St. 196, 68 N. E. 1044; *In re Runk* v. *Thomas* (1911), 200 N. Y. 447, 94 N. E. 363; *In re Grossmayer, Petitioner* (1900), 177 U. S. 48; and there was no error in issuing the writ unless, as defendants urge, the peculiar facts of relator's case bring it within the recognized rule that a court will not issue a writ of mandate if it is apparent that it will prove to be an ineffectual remedy.

The relator's verified complaint discloses that, prior to the filing of his petition for a writ of error *coram nobis,* the judgment entered against relator in the original case had been fully executed. The defendants contend that, by reason of relator's having paid the fine and served the 30 days imposed by the sentence, there can be no second trial of the relator; that any question as to guilt or innocence of relator will be moot; that the criminal court of Lake County has exhausted its jurisdiction and has no power to proceed

further; that, by a plea of former jeopardy, the relator can defeat the very thing he purports to seek—a new trial on the merits of his cause. If the criminal court of Lake County should grant to the relator the relief sought, the judgment in the original case will be set aside and vacated, and the relator will be put on trial again on the original charge. And, if, as urged by defendants, the criminal court of Lake County then will be powerless to proceed with a second trial, the relator will, in effect, secure an acquittal, since all the legal consequences of his trial and conviction will be wiped out. Obviously, this court will not by its mandate require a trial court to do an act that must result either in nothing or in forcing the trial court into being a party to an illegitimate acquittal. But we do not agree that the criminal court of Lake County will be powerless to try the relator a second time in case the hearing on the merits of relator's petition for a writ of error *coram nobis* should result in the court's granting the writ. On a new trial, the question of the guilt or innocence of the relator will not be a moot question. Granting that he cannot recover the amount of the fine and costs imposed upon conviction in the first trial, it does not follow that relator's effort to clear his reputation presents a moot question. There are cases holding that an appeal in a criminal case will be dismissed as moot upon a showing that the appellant has satisfied the judgment; but the better reasoning is with the cases to the contrary, and the theory and result of the latter cases are more consonant with justice. The right of reputation was early recognized in Anglo-American law and the machinery of legal redress is at the disposal of any person to vindicate his good name. Many utterances of a defamatory nature are actionable *per se* and, in the very beginning of the law of defamation, the rule was established that language which im-

puted a species of misconduct to which the law attached a criminal punishment was actionable *per se*, without any allegations or proof of actual pecuniary injury. Thus, it is clear that the law recognizes and protects the individual's interest in his reputation from defamation that imputes criminal misconduct, regardless of pecuniary damage; and it would seem absurdly inconsistent to dismiss as moot a proceeding initiated to clear one's reputation of the infamy and stigma resulting from an allegedly erroneous conviction on a criminal charge, even though the one seeking vindication cannot, for reasons of public policy, recover the amount of his fine and costs, nor compel the state to pay damages for his unjust imprisonment.

> "An erroneous judgment against him is an injury *per se*, from which the law will intend he is or will be damnified by its continuing against him unreversed. . . . A judgment on the merits is conclusive between the parties, and if not by direct, it may be followed by remote consequences actually injurious." *Barthelemy* v. *People*, 2 Hill (N. Y.) 248, 255.
> "It appears by the record that the plaintiff in error was sentenced to one year's imprisonment in May, 1896, and consequently that his term must have expired. This fact, however, makes no difference with the disposition of the case. A person convicted of crime may prosecute his writ of error while serving his sentence, and the fact that he may serve out his entire sentence before the decision of his case does not affect his right to a reversal of the judgment if it be erroneous." *Roby* v. *State* (1897), 96 Wis. 667, 71 N. W. 1046. See, also, *Johnson* v. *State* (1911), 172 Ala. 424, 55 So. 225, 59 A. L. R. 1271; *Page* v. *People* (1881), 99 Ill. 418, 425; *State* v. *Winthrop* (1928), 148 Wash. 526, 269 Pac. 793, 59 A. L. R. 1265.

Furthermore, the relator sets out in his verified petition for a writ of error *coram nobis* that the United States government is about to deport the relator, and

that the proceeding for such deportation is based upon the sentence and conviction which the relator is seeking to have set aside. If the relator should be granted the relief sought by his petition for a writ of error *coram nobis* and, when put on trial the second time, should be acquitted, the penalty of deportation will be avoided.

The defendants further urge that in case the relator is granted the relief sought by his petition (i. e. that the judgment in the original trial be vacated and that the relator be put on trial again on the original charge) the relator can interpose a plea of former jeopardy and thus nullify the action of the trial court in granting a new trial. But this assumption ignores the function of the writ of error *coram nobis*.

> "The proceeding [i. e. petition for a writ of error *coram nobis*] adopted by the appellant is, in its general features and in its consequences, closely analogous to a motion for a new trial, and as a defendant who takes a new trial granted at his own request cannot claim that the finding set aside constitutes a prior jeopardy, he cannot do so in a proceeding like this." Elliott, J., in *Sanders* v. *State, supra.*

It is well settled in this state that a defendant who has been convicted of manslaughter upon an indictment charging first degree murder cannot be convicted thereafter of first or second degree murder under a prosecution based upon the same facts, in the face of a plea of former jeopardy; but, it is equally well settled that the defendant, if he be granted a new trial, may be tried on the original indictment and validly convicted of murder. The latter result can follow only upon the theory that the granting of a new trial legally destroys the first trial and that the defendant, by asking for and obtaining a new trial, both can, and does, accept the legal consequences that follow from treating the first trial "as if no trial had been had"; (§2324 Burns 1926); a result that

would be impossible, legally, if the defendant could not waive his constitutional protection against second jeopardy. That the legal effect of granting a writ of error *coram nobis* is to put the state and defendant in the same relation "as if no trial had been had" is shown by the judgment of this court in *Sanders* v. *State, supra*. That judgment was as follows:

> "Judgment reversed with instructions to vacate the judgment upon the indictment against the appellant; to permit him to withdraw the plea of guilty, and to plead to the indictment; to put him upon trial in due form of law upon *the indictment preferred* against him and for further proceedings in accordance with this opinion." (Our italics.)

We see no reason why one who obtains a new trial by a writ of error *coram nobis* does not waive his constitutional protection against second jeopardy just as effectively as one who obtains a new trial by the more common procedure. Nor do we think it is material that the relator in this case has paid the fine of $10 and served the 30 days in jail. In *Jeffries* v. *State* (1867), 40 Ala. 381, the defendants secured a reversal of sentence and judgment, but after they had served several months of their term of imprisonment. When arraigned on the second trial, they pleaded former conviction. After stating the general rule that one who procures a reversal of his conviction "waives his constitutional immunity against being a second time placed in jeopardy," Walker, C. J., continues:

> "The fact that the prisoner had suffered a portion of the prescribed imprisonment, before the reversal of this case, cannot change the principle. The failure of the court to delay the punishment, pending the proceedings in the Supreme Court, may give the prisoner a strong claim on the executive clemency for a reduction of the period of imprisonment; but

it does not present any legal bar to another trial, after he has procured a reversal."

In *Murphy* v. *Commonwealth* (1898), 172 Mass. 264, 52 N. E. 505, 43 L. R. A. 154; the Supreme Judicial Court, on writ of error, set aside a sentence on the ground that the statute under which the sentence was pronounced was unconstitutional, so far as it related to past offenses; and the case was remanded to the trial court for sentence according to the law as it was when the offense was committed. The defendant had served almost three years under the first sentence. On an appeal (174 Mass. 369, 54 N. E. 860, 48 L. R. A. 393) from the action of the trial court in imposing a second sentence, the defendant contended that "one who has served a substantial portion of the time for which he was sentenced cannot be resentenced if it turns out on a writ of error brought by him that the original sentence was unlawful;" that, in his case: "the resentence constituted a second punishment for the same offense"; that he had been "twice placed in jeopardy thereby" and that he had been deprived "of his constitutional right." The reasoning of Morton, J., as indicated by the following excerpts, seems decisive of any question of former jeopardy that might be raised in the instant case:

"The question then, is, was the effect of the last sentence to put the defendant in jeopardy twice, or to punish him again for the same offense, or to abridge his privileges and immunities as a citizen of the United States?" . . . "If a second trial, where the verdict has been set aside or the judgment arrested, does not constitute legal jeopardy, it is difficult to see how a party who may have served a portion of the sentence that has been set aside for error, on proceedings instituted by him, can rightfully object to the imposition of another and lawful sentence by the court to which the case has been remanded," etc.

"But a judgment and sentence reversed are the same as if there had been no judgment and sentence . . . and this must be so even if the prisoner has served a part of the sentence. Whether the confinement on the reversed sentence has been longer or shorter can, on principle, make no difference . . . ; and though the effect of the resentence will be to compel the defendant to suffer solitary confinement twice, and will result, it is said, in his actual confinement for a longer period than the term for which he was originally sentenced, we do not see, for the reasons already given, that the last sentence is rendered invalid thereby." (Affirmed, 177 U. S. 155, 20 Sup. Ct. 639, 44 L. Ed. 711.)

It is well established in our state that an accused can waive prior jeopardy; and this court has held a statute constitutional which provides that "the granting of a new trial places the parties in the same position as if no trial had been had" and that "the former verdict cannot be used or referred to, either in the evidence or argument." §2324 Burns 1926; *Patterson* v. *State* (1880), 70 Ind. 341, 346; *Veatch* v. *State* (1878), 60 Ind. 291, 295; *State* v. *Balsley* (1902), 159 Ind. 395, 65 N. E. 185; *Ex parte Bradley* (1874), 48 Ind. 548. The above results are sound, because the Constitutional prohibition against second jeopardy is a restriction on the power of the state for the benefit of the accused and the accused can relinquish the benefit; and, also, because an accused has no constitutional right to a second trial, and, if he obtains a new trial, he must "take it upon the terms and conditions of the statute," etc. *State* v. *Balsley, supra.*

Since we conclude that the legal consequence of granting a writ of error *coram nobis* is to place "the parties in the same position as if no trial had been had," it follows that if the criminal court of Lake County, after a hearing on the merits of relator's petition,

should grant a writ of error *coram nobis*, the relator will not be able, in the new trial, to get any advantage from the fact that he has discharged the judgment of the original trial. Neither the law, nor the relator by his conduct, can wipe out the fact that he has been tried and convicted, and has suffered the punishment imposed as a result of his conviction. But there is no inherent difficulty in avoiding or changing the legal consequences that ordinarily attend that fact. The state must accept the legal consequence that one who has suffered punishment, even under a void judgment, cannot be compelled to undergo a second punishment for the same offense. But there is no greater legal difficulty in allowing the relator to avoid the legal consequences of having suffered punishment than there would have been in allowing him to avoid the legal consequences of having been tried, convicted and sentenced. In both cases, the avoidance of legal consequences would rest upon the desire and consent of the relator, and he must be considered as consenting to an avoidance of all legal consequences of his former trial, including the legal consequences of having discharged the judgment. We are not unfamiliar with situations in which one may, in fact, suffer punishment twice for the same act. In many states, one who manufactures intoxicating liquor is subject to prosecution and punishment both by the state and by the United States. In this situation, we say that, by reason of our dual form of government, the accused has committed two offenses, one against each sovereignty, and consequently he is not punished twice for the same offense. This, however, is just saying that a second punishment in fact may be a first punishment in law. We find no difficulty in deciding that the relator, if put on trial a second time, cannot avail himself of the fact that he has discharged the judgment of the original trial.

The defendants also urge as a reason why a writ of mandate will be ineffectual that the criminal court of Lake County has exhausted its jurisdiction in the case of *State* v. *Lopez*, No. 10,116; and, consequently, that Lopez, the relator, cannot be tried again by that court. It is true that, at the present moment, the criminal court of Lake County does not have jurisdiction over the original cause presented by the prosecution of the relator; but the court does have jurisdiction of the cause presented by the relator's petition for a writ of error *coram nobis* and, if the court grants the petition, it will, *ipso facto*, be revested with jurisdiction of the original cause.

The suggestion of the defendants that the relator waived any right he might otherwise have had to open up the original cause by paying the $10 fine and by serving the 30 days' imprisonment, is not tenable. The defendants do not insist that the mere paying of the fine and the serving of the term constituted a waiver, but do insist that these acts, taken in connection with the fact that the court could have imposed a larger fine and a longer term of imprisonment, amounted to an acceptance of a benefit under the judgment and constituted a waiver. If the relator had accepted a remission of the fine, or a suspension of the part of the sentence imposing imprisonment, there would be merit in the defendants' contention. The cases cited by the defendants involve the acceptance of a benefit under the judgment in the sense of an actual mitigation of the penalty imposed by the judgment.

This somewhat extended discussion of the legal effect of granting a writ of error *coram nobis* must not be understood as deciding, or even intimating, that the relator's petition entitles him to the writ and its attendant relief. We are deciding: (1) That the relator is entitled, as a matter of right, to file his petition in, and have the

same passed on by, the criminal court of Lake County; and (2) that the writ of mandate will not be ineffectual and nugatory, in view of our preliminary conclusions: (a) that a new trial of the relator, if granted, will not present a moot case; (b) that the relator cannot, after obtaining a new trial by writ of error *coram nobis,* interpose a plea of former jeopardy, or former punishment; (c) that the criminal court of Lake County will not be without jurisdiction to retry the original cause; (d) that relator has not waived any right he may otherwise have to a retrial of the original cause by discharging the judgment in the original cause. The permanent mandate will stand.

Petition for a rehearing denied.