CICHOS *v.* STATE OF INDIANA.

[No. 30,482. Filed July 6, 1965. Rehearing denied October 1, 1965.]

*Warren Buchanan* and *John R. McFaddin,* of Rockville, for appellant.

*John J. Dillon,* Attorney General, and *James Manahan,* Deputy Attorney General, for appellee.

ACHOR, J.—Appellant was previously charged in two counts. (1) Involuntary Manslaughter, and (2) Reckless Homicide. He was convicted on the latter charge—the verdict was silent as to the charge of the first count. Said judgment was appealed to this court, which reversed the judgment with instructions to grant appellant a new trial.

Appellant was again charged with (1) Involuntary Manslaughter, and (2) Reckless Homicide, and the resultant verdict was the same as that which resulted from the first trial.

In this, his second appeal, appellant urges six propositions of law which will be considered in the order in which they are presented in appellant's brief.

*One:* Appellant urges that the trial court committed reversible error by permitting the state to prosecute him a second time for either involuntary manslaughter or reckless homicide, for the reason that in the original trial the jury, by failing to make a finding as to the charge of involuntary manslaughter, impliedly had acquitted appellant on that charge, and further, since the factual circumstances involved in the charge for reckless homicide were the same infractions of the law as were involved in the count for involuntary manslaughter, the jury, therefore, having determined that appellant was not guilty of a crime involving

these alleged acts, could not subject him a second time to a criminal charge involving the same infractions.

Admittedly there is substantial authority that silence as to one count of several counts of an indictment is equivalent to a verdict of not guilty on that count. *Smith* v. *State* (1951), 229 Ind. 546, 99 N. E. 2d 417; *Ward* v. *State* (1919), 188 Ind. 606, 125 N. E. 397; *Beaty* v. *State* (1882), 82 Ind. 228; *Harvey* v. *State* (1881), 80 Ind. 142; *Bryant* v. *State* (1880), 72 Ind. 400; *Bonnell* v. *State* (1878), 64 Ind. 498; *Weinzorpflin* v. *State* (1884), 7 Blackf. (Ind.) 186; Ewbanks, Indiana Criminal Law § 445, p. 282.

Also, the cases generally make no distinction as to whether the numerous counts are lesser included offenses, greater offenses, or merely different charges concerning the same transaction. In the leading case of *Weinzorpflin* v. *State, supra,* the doctrine of silence being equivalent to an acquittal was promulgated with reference to the common law doctrine that a jury could not be dismissed until a verdict was returned. That case, however, distinguishes its facts from a situation where the court could judicially know that the multiple counts were merely different charges of the same offenses.

The distinction drawn in *Weinzorpflin* v. *State, supra,* although supported by substantial logic, was not long observed, and the axiom, silence means acquittal, soon came to be applied with no regard as to whether the count on which the verdict was silent was a greater or lesser included offense or a different charge for the same unlawful transaction. See: *Beaty* v. *State, supra.* On the other hand, the logic of the principle which states silence is equal to an acquittal is perhaps made inappropriate to charges of these offenses, related to the same unlawful transaction, es-

pecially since this court judicially knows the trial court practice of telling the jury to return a verdict on only one of the charges in view of the limitation on penalty.

Rather than treat the silence of the jury in the involuntary manslaughter count in this case as an acquittal, the better result would seem to be to hold that the reckless homicide verdict encompassed the elements of involuntary manslaughter,[1] and that appellant was simply given the lesser penalty.

*Two:* Under the state prohibition against double jeopardy [Constitution of Indiana Art. 1, §14], as interpreted by the courts, the fact situation here involved does not present a case of double jeopardy. *State* v. *Balsley* (1902), 159 Ind. 395, 65 N. E. 185; *Patterson* v. *State* (1880), 70 Ind. 341; *Veatch* v. *State* (1878), 60 Ind. 291; *Mills* v. *State* (1875), 52 Ind. 187; *Ex Parte Bradley* (1874), 48 Ind. 548; *Joy* v. *State* (1886), 14 Ind. 139; *Weinzorpflin* v. *State, supra; Morris* v. *State* (1819), 1 Blackf. (Ind.) 37; accord: *State ex rel. Lopez* v. *Killigrew* (1931), 202 Ind. 397, 174 N. E. 808.

---

1. *Reckless Homicide.* "Any person who drives a vehicle with reckless disregard for the safety of others and thereby causes the death of another person shall be guilty of the offense of reckless homicide. Any person convicted of reckless homicide shall be punished by a fine of not less than one hundred dollars [$100] or more than one thousand dollars [$1,000], or by imprisonment in the state farm for a determinate period of not less than sixty [60] days and not more than six [6] months, or by both such fine and such imprisonment, or by a fine of not more than one thousand dollars [$1,000] and imprisonment in the state prison for an indeterminate period of not less than one [1] year or more than five [5] years."

Acts 1963, ch. 282, §1, p. 458 (being Burns' Ind. Stat. Anno. §47-2001(a) (1964 Supp.)).

*Involuntary Manslaughter.* "Whoever . . . kills any human . . . involuntarily in the commission of some unlawful act, is guilty of manslaughter, and on conviction shall be imprisoned not less than two [2] years nor more than twenty-one [21] years."

Acts 1941, ch. 148, §2, p. 447 (being Burns' Ind. Stat. Anno. §10-3405 (1956 Repl.)).

The Balsley case, *supra*, is substantially similar to the present controversy. In that case, appellee was tried on an indictment of two counts. One charged embezzlement and the other larceny. The jury verdict found appellee guilty of larceny but was silent as to the embezzlement count. Subsequently the larceny conviction was reversed on appeal and a new trial granted. Appellee, charged again with both larceny and embezzlement, filed a plea of abatement as to the embezzlement count claiming former jeopardy. A demurrer to the plea was overruled, but on appeal, this court reversed the overruling of the demurrer with a singularly appropriate discussion of double jeopardy. This court at page 397 stated:

> "The rights of the defendant and the State upon a new trial are clearly defined by statute: 'A new trial is a re-examination of the issues in the same court. The granting of a new trial places the parties in the same position as if no trial had been had; the former verdict cannot be used or referred to, either in the evidence or argument.' §§1909, 1910, Burns 1901 [now Burns' Ind. Stat. Anno. §§9-1901, 9-1902 (1956 Repl.)].
>
> "It is entirely clear that when the appellee asked for and obtained a new trial of the issues in his case, the results of the previous trial were wholly vacated. He could not, under the indictment, take a new trial as to the issue upon one count, and not upon the other. If he obtained a new trial, he was bound to take it upon the terms and conditions of the statute, and one of those conditions was that 'the parties should be placed in the same position as if no trial had been had.' This point has been decided in many cases in this State, and must be considered as settled." [Citing cases.]

*Three:* Appellant finally contends that retrial under both counts of the indictment constituted double jeopardy as prohibited by the Fifth Amendment and the due process clause of the Fourteenth Amendment to the U. S. Constitution.

Appellant asserts that, despite the established Indiana law on this issue, a change in Indiana law is compelled by *Green* v. *United States* (1957), 355 U. S. 184, 2 L. Ed. 2d 199. However, among other facts which must be considered in relation to this assertion is the fact that the Green case was a federal case and therefore the rule enunciated arose under the U. S. Supreme Court's supervisory power over federal courts. The Green case involved a retrial on a murder charge, and resulted in a verdict of guilty of first degree murder, after a prior trial which had resulted in a second degree murder conviction had been reversed on appeal. Applying the Fifth Amendment double jeopardy provision, the Supreme Court held that a conviction of a lesser included offense amounted to an acquittal of the greater offense. Consequently, they reasoned that, on retrial, the accused could be tried for no greater charge than that for which he was originally convicted.

Aside from the obvious fact that the Green case, *supra,* involved the application of federal law and federal standards, there is the distinction concerning the character of the charges twice in issue. The offenses here involved are statutorily treated more as one offense with different penalties rather than viewing reckless homicide as an included offense in involuntary manslaughter.

Since the elements of both counts are almost identical, it is recognized that a verdict of guilty of reckless homicide does not logically exclude the possibility of such a verdict on the charge of involuntary manslaughter for constitutional reasons as would be the case when a conviction is had on a lesser included offense. See Burns' Ind. Stat. Anno. §47-2002 (1956 Repl.).

When dealing with such interconnected offenses it is almost futile to attempt to sort out error and reverse a case only as to those errors which affected the defendant. Recognizing this futility, this state has accepted the position adopted by a substantial number of states, that when a defendant initiates an appeal asking for a new trial and the appeal discloses error, the original trial is treated as a total nullity, leaving the parties as they were prior to the proceeding tainted with error. Burns' Ind. Stat. Anno. §9-1902 (1956 Repl.). Compare: *Green* v. *United States, supra,* 355 U. S. 184, 216 n. 4; 2 L. Ed. 2d 199, 220 n. 4 (dissenting opinion).

The protection against double jeopardy has never specifically been incorporated within the scope of the due process clause of the 14th Amendment, supra, by the Supreme Court.[2] Arguable, the double jeopardy provision is not necessarily a hallmark of either system, and it is reasonable to assume that some limitation on the total incorporation of the Fifth Amendment within the due process clause of the 14th Amendment may still exist.

In view of the diverse reasoning by many of the states concerning double jeopardy in situations similar to the instant case, it does not appear that the federal standard of double jeopardy in *Green* v. *United States, supra,* can be deemed so fundamental a concept of ordered liberty as to compel a total revision of state interpretations of the doctrine, which interpretations of their own constitutions are primarily the prerogative of the states.

Judgment sustained.

---

2. The broad language in Malloy v. Hogan (1964), 378 U.S. 1, 12 L. Ed. 2d 653, indicates a future possibility of such incorporation. See also: Hoag v. State of New Jersey (1958), 356 U. S. 464, 2 L. Ed. 2d 913 [five to three decision by Harlan, J.; Warren, C. J., Douglas and Black JJ. dissent].

Jackson, C. J. and Landis, J. concur in result.

Arterburn and Myers, JJ. concur.

ON PETITION FOR REHEARING

ACHOR, J.—Appellant has filed a petition for rehearing in which he asserts that this court, in its opinion as written, erred in two particulars.

*First:* That this court failed to comply with the requirements of Art. 7, §5 of the Indiana Constitution by failing to "give a statement in writing of each question arising in the record and the decision of the court thereon." It is not that this court has presumed to disregard this constitutional provision, but since the provision is merely directive and does not involve any substantive rights of the litigants involved, we have given it a reasonable construction consistent with the obviously intended purpose thereof. Accordingly we have limited our discussion to the principal contentions in the case which, incidentally, were the issues discussed in oral argument. We intentionally omitted from our discussion those "questions arising in the record" which seemed frivolous, were not supported by substantial argument in the briefs or were so patently contrary to the well-established law of the state since a discussion thereof would merely constitute an unjustifiable encumberance of the reported decisions of the state without making any contribution to the general body of the law.

Strong precedent has been established supporting the position that this constitutional provision is to be given reasonable rather than a literal construction. As stated by this court in *State ex rel Sluss* v. *Appellate Court of Indiana* (1938), 214 Ind. 686, at 691-692, 17 N. E. 2d 824:

"the constitutional provision quoted above [Art. 7, §5] must have, however, a reasonable interpretation as well as a practical application. It is not to be presumed that the framers of that document intended that this court should be required to exhaust every subject that might be raised on an appeal, without regard to its importance in the determination of the cause.

"In the case of *Willets* v. *Ridgway* (1857), 9 Ind. 367, 369, 370, Perkins, J., speaking for this court, said:

'It is true that the constitution, by an unwise provision, requires that this Court shall give a written opinion upon every point arising in the record of every case—a provision which, if literally followed, tends to fill our Reports with repetitions of decisions upon settled, as well as frivolous, points and often intoduce into them, in the great press of business, premature and not well considered opinions, upon points only slightly argued; yet it is a provision not to be disregarded, though merely directory, like that requiring the legislature to use good *English*. But though the provision is not to be disregarded, *it is to be observed according to some construction, and should receive such a one as to obviate its inconvenience and objectionable character,* as far as consistently can be done.' " [Our emphasis.]

Furthermore, in a more recent case, when confronted with circumstances very similar to those existing in the present case, this court in *Appleby* v. *State* (1943), 221 Ind. 544, at pp. 549-550, 48 N. E. 2d 646 [reh. den. 49 N. E. 2d 533], stated:

"The appellant's motion for a new trial occupies forty-five (45) of the six hundred sixty-eight (668) pages of their printed brief. Sixty-six (66) separate and distinct legal propositions are presented for our determination. We cannot bring ourselves to believe that the framers of our State Constitution had any such situation in mind when they enjoined upon us the obligation to 'give a statement in writing of each question arising in the record' (Article 7, Section 5), or when they imposed upon the General Assembly the duty to

provide for the 'speedy publication of the decisions' of this court (Article 7, Section 6). At the risk of being charged with failing to meet our responsibilities, *we feel obliged to limit our consideration of this case to what appear to be the principal contentions.* We have pointed out in the past that one prejudicial error clearly presented is enough to accomplish a reversal by this court. *Weer* v. *State* (1941), 219 Ind. 217, 36 N. E. 2d 787, 37 N. E. 2d 537." [Our italics.]

In other instances this court has applied the rule of reason to the above constitutional directive by providing that the court need not give a statement in writing of each question arising in the record, unless the parties have filed briefs and therein presented substantial argument regarding the issue so as to aid the court in making its decision regarding the questions presented by the record in such case. Furthermore, as above noted we have held that in reversing a case we need only discuss a single issue arising in the case which sustains the decision of this court.

In this case we have limited our consideration to those issues which we considered to be substantial questions and this we have endeavored to do in a comprehensive manner.

To demonstrate our reason for not discussing the other many specifications assigned as error, we make the following comment with regard to a few of such specifications, which are illustrative of those asserted in appellant's petition for rehearing. Appellant's Proposition II, Point 1, urges that the trial court committed prejudical error by permitting State's Exhibit No. 3 to be admitted in evidence. Appellant claims that this exhibit, which was a photograph of one of the automobiles involved in the collision, was erroneously admitted because the body of one of the decedents was hanging from the wreckage and therefore the exhibit was calculated only to inflame the jury and

served no other purpose. In support of his contention, appellant cites the case of *Kiefer* v. *State* (1958), 239 Ind. 103, 153 N. E. 2d 899. However, examination of that case reveals that it does not support appellant's contention but, rather, justifies the admission of the evidence since the picture was an unaltered part of the res gestae of the case.

Appellant's Proposition II, Point 2, urges that the trial court committed error in permitting the state's witness to describe a conversation which he had with a witness for the defense shortly after the accident and out of the appellant's presence. Appellant claims error with regard to the admission of such evidence notwithstanding the fact that said testimony was admitted explicitly for the purpose of impeaching the defense witness, pursuant to the foundation which was laid in the cross-examination of said witness. The alleged error is contradicted by the well established law of this state as it has existed for 145 years.

In the early case of *Shields* v. *Cunningham* (1820), 1 Blackf. 86, at p. 87, this court stated:

> "We consider this to be the correct doctrine: Where a witness has, at other times and places, made statements repugnant or contradictory to those delivered in Court, and relative to facts material to the issue, the adverse party has a right to prove that circumstance in order to discredit the witness, or diminish the weight of his testimony;..."

The credibility of a witness, party, or accused may be attacked by showing that at another time and place he made an oral or written statement inconsistent or contradictory to his testimony. See: *Pollard* v. *State* (1950), 229 Ind. 62, 94 N. E. 2d 912. See also: Wigmore on Evidence §884, p. 376.

In the present case other specifications involved numerous instructions tendered by the appellant on the subject of mere negligence as related to the charge of involuntary manslaughter or reckless homicide. The court's own instructions adequately covered this subject, and it was not therefore necessary for the court to read all of the appellant's array of instructions which would have, if given, had the effect of over-emphasizing the subject of "mere negligence" as an element in the case.

Likewise, appellant complains that the court did not give numerous instructions on the subject of reasonable doubt. This subject was also adequately presented by the court's own instructions. In fact, one of appellant's instructions, which the court refused to give, was given verbatim by the court as one of his own instructions. The absence of any merit to these specifications is so patent that no discussion seemed necessary.

Furthermore, appellant's Proposition II, Point 2, urges that the trial court erred in giving its instruction No. 2. True, appellant has engaged in a lengthy dissertation in his brief regarding this instruction. Although the instruction is subject to some rhetorical weakness, we cannot say that it was legally incorrect or that the jury was mislead thereby. As demonstrated in appellee's brief, this instruction is supported by the case law of the state, and appellant has not favored us with a reply brief which refutes the conclusiveness of this authority.

As previously stated, the above specifications of error were not previously considered by this court in its opinion but were omitted because they were patently without merit, and although the constitution provides that the court "give a statement in writing of *each question* arising in the record" of

such case, we are of the opinion that the law is so firmly established with regard to the specifications of error asserted by appellant that there is, in reality, no substantial question with regard to such specifications and, therefore, that within a reasonable construction of the constitutional directive it was unnecessary that the court encumber the opinion with a discussion of this voluminous subject matter.

*Secondly:* Appellant reasserts that the verdict against him is void for the reason that the implied finding of not guilty in the prior trial with respect to the charge of involuntary manslaughter requires the conclusion that appellant was also not guilty of reckless homicide, both of which offenses involved the same acts on his part. This issue was fully considered, and we believe correctly so, in the opinion as written.

Rehearing denied.

Arterburn & Myers, JJ. concur.

Jackson, C. J. & Landis, J. concur in the result.

NOTE.—Reported in 208 N. E. 2d 685. Rehearing denied 210 N. E. 2d 363.