Argued December 7, 1955, reversed and remanded May 23, 1956

## STATE OF OREGON *v.* HUFFMAN

297 P. 2d 831

*Merlin Estep,* of Salem, argued the cause for appellant. With him on the brief were Hewitt, Estep & Sorensen, of Salem.

No brief filed and no appearance for respondent.

## BRAND, J.

On 21 September 1950 in the circuit court for Lincoln county, the defendant, Sam Huffman, was sentenced to the penitentiary for a maximum term of three years upon the charge of larceny by bailee. On the 18th day of December, 1952, the defendant filed in that court and cause a motion in the nature of coram

nobis, seeking an order vacating the judgment previously entered on the 21st day of September, 1950, and granting the defendant leave to withdraw his plea of guilty and to enter a plea of not guilty. The record fails to show any action by the court upon the original motion, except as hereinafter indicated. On 30 December 1954 the defendant filed a supplemental motion to vacate judgment, accompanied by affidavits. On 21 March 1955 an order was entered denying the defendant's motion and supplemental motion, from which order the defendant has appealed.

The history of the original Lincoln county prosecution and trial is as follows: On 18 September 1950 there was filed in the circuit court of Lincoln county an information of the district attorney on waiver of indictment, charging the defendant Sam Huffman with the crime of larceny by bailee, and on the same day there was entered in said court an order entitled "Waiver and presentment of indictment". The order recited that the defendant appeared in person and by his attorney and that said defendant

"having heretofore expressed his desire to waive indictment and presentment by the grand jury * * * and having communicated to the district attorney his desire to waive indictment as aforesaid and to enter his plea of guilty to said charge and now in open court, states that he waives the finding and presentment of an indictment by the grand jury * * * and requests the court to enter an order authorizing and directing that the waiver of the defendant be entered in the records of this court and directing the district attorney to file in this court an information charging * * * the crime of larceny by bailee."

The order further recites that

"the court being fully advised does here and now fully advise said Sam Huffman of his right to de-

mand indictment for said crime by the grand jury * * * but notwithstanding said defendant still waives his right to being indicted and requests proceedings in accordance with the foregoing waiver.''

Therefore the court ordered that the waiver be entered of record and that the district attorney file an information. On the same day the defendant signed a ''waiver'', which reads as follows:

"The undersigned, Sam Huffman, having been accused of the crime of larceny by bailee, committed in Lincoln County, Oregon on August 1, 1950, and being fully advised as to my statutory and constitional rights, including my right to have said matter presented to the Grand Jury, and after being so advised, freely and voluntarily waive presentment of said matter to the Grand Jury and consent to the filing of an information by the District Attorney of Lincoln County, Oregon charging me with the crime of larceny by bailee.

"Dated this 18th day of September, 1950.
"Sam Huffman''.

On the same day the record shows by journal entry that the defendant appeared in court; was arraigned in open court on information of the district attorney, and that he entered a plea of guilty. It is further recited that the ''defendant waived time to be sentenced 'now' ''. Sentence was postponed until September 25, 1950. On September 20, 1950 a journal entry shows that the defendant appeared in court in person. ''Witnesses were questioned by the court.'' The defendant was given until 1:30 for sentence. After the noon recess the defendant asked to change his plea to not guilty. The State of Oregon objected to a change of plea at that time. The court postponed sentence to consider the defendant's request. On September 21, 1950 the court denied the motion of the defendant for leave to

change his plea and sentenced the defendant to the state penitentiary for not to exceed three years.

The motion filed by the defendant on 18 December 1952 wherein he sought an order vacating the sentence theretofore imposed, was based upon the following allegation as contained in the motion, to-wit: On the ground that the defendant's plea of guilty was induced and "brought about by fraud, misrepresentation and trickery directed to and perpetrated upon the above entitled court, the State of Oregon and the defendant in the prior proceedings herein", and upon the further ground that the denial on September 21 of the defendant's request to withdraw his plea of guilty "was based upon fraud, misrepresentation, trickery and perjury on the part of one Roy Myers, the complaining witness herein directed to and perpetrated upon the above entitled court, the State of Oregon and the defendant." In support of the motion the defendant attached five affidavits.

It appears from the information charging defendant with the crime of larceny by bailee that the charge was based upon the allegation that defendant was bailee of certain personal property, to-wit: a power saw of the value of $150, the property of Roy Myers, and it was alleged that the defendant did wilfully, unlawfully and feloniously fail and neglect and refuse to deliver, keep and account for said property, according to the nature of his trust.

The affidavit of the defendant Huffman was to the effect that he was innocent of the crime stated in the information; that he was the owner of the power saw, which he had purchased, and that at the time he asked permission to enter a plea of not guilty on September 20, 1950 he had been told "by persons close to, and apparently officers of the court, and 'it was my under-

standing that the criminal charges were going to be dropped and that the case was to go on as a civil case to collect money that I owed Roy Myers.' '' He further swears that with reference to the journal entry of September 20, 1950, reciting that witnesses were questioned by the court, the principal witness questioned was Roy Myers, and that Roy Myers deliberately lied to His Honor Judge Fred McHenry, when he told the court that he had only loaned the saw to him. He states further that when he realized that the charges were not going to be dropped, he tried in every way possible to obtain legal counsel but was unable to do so. It was not possible for him to communicate his desire for counsel to the court for the reason that he was denied all avenues of communication to counsel and to the court.

An affidavit filed by one Mary Taylor supported the affidavit filed by the defendant Huffman. She swore, in substance, that she had heard conversation between Myers and Huffman indicating that Myers had actually sold the saw to Huffman. The affidavit of L. E. Crow was to the same effect. Affidavits of C. R. Harrison and Kenneth Donald Ridenour were to the effect that they were in the Lincoln County Jail when Huffman was there, and their statements tend to support Huffman's claim that he was denied counsel.

On the 30th day of December 1954 Huffman filed in the circuit court for Lincoln county a supplemental motion to vacate the judgment of conviction. The motion, after reciting defendant's conviction and sentence, alleges that on 22 August 1951 defendant Huffman as plaintiff filed a petition for a writ of habeas corpus in the circuit court for Marion county, alleging that his conviction was void. The motion further alleges (and the facts in this respect are as alleged),

that the circuit court of Marion county dismissed the habeas corpus proceeding; that Huffman appealed to this court, and that on 6 December 1952 this court reversed the judgment of dismissal and remanded the habeas corpus case to the circuit court for Marion county for further proceedings. See *Huffman v. Alexander,* 197 Or 283, 251 P2d 87, 253 P2d 289. Defendant recites the further facts that the defendant warden of the penitentiary filed a petition for rehearing which was denied by this court and that we then dismissed the habeas corpus proceeding on the ground that the case was moot because the defendant had already been released from the penitentiary. See our opinion, 197 Or 331, 253 P2d 289. Huffman as plaintiff in the habeas corpus case filed a petition for rehearing which was denied. The supplemental motion filed in the circuit court for Lincoln county continues as follows:

"On the 22nd day of September 1952, after the habeas corpus case hereinabove identified had been argued and submitted in the Supreme Court of Oregon, and while the Cause was pending therein, the Defendant therein, George Alexander, discharged the Defendant herein, Sam Huffman, from the Oregon State Penitentiary.

"Said discharge of Sam Huffman was unauthorized by law or by any Court, and was and is wholly unlawful in that at the time of discharge he had not and would not have completed service of said sentence by the time of the aforesaid decision of the Supreme Court of Oregon, rendered on the 6th day of December 1952, remanding the Cause for new trial, even after deducting therefrom the maximum amount of time authorized by statute for good behavior; and that the Defendant in said habeas corpus proceeding neither obtained nor requested permission of the Supreme Court of Oregon to release the said Sam Huffman from custody, and said discharge by the Warden of the Oregon State Peni-

tentiary, Defendant in the said habeas corpus case then pending as aforesaid, was not upon order or authorization of any other Court, or of any person official, board or agency.

"Neither party to said habeas corpus proceeding ever at any time requested that the said case be dismissed because of the discharge of the plaintiff therein from the Penitentiary, as aforesaid, and the records and files of the Supreme Court of Oregon do not disclose any information of said discharge other than a letter from Mr. Lloyd G. Hammel, Assistant Attorney General of Oregon to the Clerk of the said Court under date of January 23, 1953, stating that the Plaintiff therein had been discharged."

Two supporting affidavits were filed with the supplemental motions. The affidavit of Huffman reads as follows:

"I, Sam Huffman, being first duly sworn, say:

"I am the Defendant in the case of The State of Oregon vs. Sam Huffman, Case No. 9111, in the Circuit Court of the State of Oregon for the County of Lincoln.

"Pursuant to the sentence entered in the above-named cause I was imprisoned in the Oregon State Penitentiary on or about the 22nd day of September, 1950. While so imprisoned I became ill and on or about the 2nd day of June, 1951, I was transferred to the Oregon State Hospital, in Salem, Oregon, and I remained in said Hospital continuously until on or about the 22nd day of September, 1952, except for court appearances and for a period of about eight days when I was returned to the Penitentiary.

"On or about the 22nd day of September 1952, an officer whose name I have never known, took me to the Penitentiary. When I got to the Penitentiary, the officers told me I was being released, and I did leave the Penitentiary that day.

"The reason for my release was never explained to me.

"To my knowledge, I was not given either a parole or a commutation of sentence.

"As soon as I arrived at the Penitentiary, on or about September 22, 1950, I started trying in any way I could to get in touch with a lawyer. From then until one of my present attorneys actually did call on me I asked officers of the Penitentiary to help me get in touch with an attorney whenever I had a chance. I also requested an interview with the Warden, which was granted after I had been in the Penitentiary about three weeks. I told him about my case and asked to let me get in touch with an attorney. The Warden, Mr. George Alexander, said he would look into my case and if he thought I really needed an attorney he would let me write to one.

"I never heard anything more from the Warden. I requested two more interviews with him within approximately the next month, but there was no response to any of my requests.

"Also, starting with about a week after I entered the Penitentiary I wrote at least two letters per week to my present Attorneys until February or March, 1951, the exact date of which I do not remember, when I received a letter from them saying they would see me in a few days. They did not visit me until on or about the 10th day of April, 1951, however."

This affidavit was dated December 23, 1954.

The second affidavit is by Mr. Merlin Estep, the attorney for the defendant Huffman. The following is a summary of the allegations therein: On 12 February 1951 he received for the first time a letter from Huffman requesting an interview at the penitentiary. He applied to the warden of the penitentiary for permission to interview the defendant. Several requests were not acted upon, but on 5 April 1951 he was permitted to interview the defendant for the first time.

The defendant was released from the penitentiary on 22 September 1952 and affiant had no knowledge of such action until on that date the defendant walked into his office. In view of the unusual nature of this affidavit we quote the remaining portion of it in full:

"* * * I immediately contacted the office of the Clerk of the Supreme Court of Oregon, of the Governor and of the Board of Parole and Probation and ascertained that the Defendant's release was not upon authorization or permission of said Court, or upon action of the Board of Parole or of the Governor.

"On September 23, 1952, I personally went to Mr. Alexander's office and inquired as to authorization and reason for discharge of the Defendant. He advised me that he was then Superintendent of the Oregon State Penitentiary and that Mr. Virgil O'Malley was Warden and that the latter was in charge of all such matters. Whereupon, I immediately called upon the said Mr. Virgil O'Malley and asked him specifically why the Defendant had been discharged. Mr. O'Malley replied: 'It was due to a mistake in figuring his time.' He further advised me that the Defendant's proper release date was not until about three months subsequent to that date even if he were given full credit for good behavior, which he said he doubted the Defendant would be entitled to because he had been in the State Hospital much of the time. He also advised me that the Penitentiary would not permit the Defendant to re-enter and serve the balance of his sentence.

"The matters set forth in the supplemental motion to which this affidavit is attached are true, as I verily believe."

Before considering the questions of law we deem it proper to state certain facts.

Counsel for Huffman swears that Warden O'Malley stated that Huffman's release was "due to a mistake

* * *." At the time of the release George Alexander was superintendent of the penitentiary. In the supplemental motion of 30 December 1954 signed by counsel for Huffman it is alleged that the discharge of Huffman was unlawful and that the records and files of the Supreme Court "do not disclose any information of said discharge other than a letter from Mr. Lloyd G. Hammel, Assistant Attorney General, to the clerk of said court, under date of January 23, 1953, stating that the plaintiff therein [Huffman] had been discharged." This allegation does not square with the facts. At least 10 months before the filing of the supplemental motion of 30 December 1954 counsel for defendant knew of the existence of other information in our files, in addition to the letter of the Assistant Attorney General. In a brief on petition for rehearing filed in the habeas corpus case on 24 February 1953 counsel for Huffman writes:

"We received a copy of said letter but not a copy of the letter from the superintendent of the penitentiary referred to therein."

The letter of the Assistant Attorney General to which counsel refers closes with the following sentence: "A formal letter of the superintendent of the state penitentiary verifying this fact is attached hereto." The attached letter from the superintendent of the penitentiary reads as follows:

"Complying with your request of this date, I have checked the record of Sam Huffman and find he was received at this institution on the 22nd day of September, 1950 to serve 3 years on a charge of larceny by bailee.

"He completed his full term, with the usual allowance off for good time, and was discharged September 22, 1952.

"George Alexander
Superintendent."

It was upon this information that we dismissed the habeas corpus proceeding as moot.

We will now consider the bearing of the habeas corpus case upon the issues in the pending appeal from the order of the circuit court for Lincoln county. An understanding of the chronological order of events will be of assistance:

18 September 1950. State v. Huffman charge of larceny by bailee.

1. Waiver signed by Huffman.
2. Order reciting waiver of grand jury and authorizing filing of information.
3. Information filed.
4. Journal entry cites arraignment, plea of guilty and time of waiver of time for sentence.

20 September 1950. Per journal entry. Defendant present in court. Witnesses interrogated by the court. Defendant asks to change plea to not guilty. Sentence postponed.

21 September 1950. Per journal entry. Motion to change plea denied. Defendant sentenced to maximum term of three years in penitentiary.

22 September 1950. Defendant imprisoned under three-year sentence.

1 October 1950 to February or March 1951. Defendant wrote to his present attorneys at the rate of two letters per week, per his affidavit.

12 February 1951. First letter from Huffman received by attorney Estep, per affidavit of Estep.

5 April 1951. First time attorney permitted to interview Huffman. Previous applications for interview had not been granted, per affidavit of Estep. Estep employed as attorney on this date.

2 June 1951. Huffman becomes ill and is transferred to Oregon State Hospital where he remains until 22 September 1952 "except for court appearances."

22 August 1951. Huffman brings habeas corpus proceeding in circuit court of Marion county.

20 February 1952. Circuit court dismisses petition for habeas corpus and remands Huffman to custody.

22 September 1952. Defendant released from penitentiary to the knowledge of Estep. (See his affidavit).

6 December 1952. Supreme Court reverses circuit court and remands habeas corpus case to circuit court for rehearing on the merits, i.e., for determination of validity of waiver of indictment and of plea of guilty, and for consideration of claimed denial of right to counsel.

18 December 1952. Defendant Huffman files motion in the circuit court of Lincoln county seeking an order vacating the three-year sentence of 21 September 1950 which was imposed in that court and permitting defendant to enter plea of not guilty to original charge.

24 December 1952. Warden Alexander files petition for rehearing of the habeas corpus decision, contending that coram nobis and not habeas corpus was the proper remedy.

23 January 1953. Supreme Court for the first time is informed by Attorney General concerning the release of Huffman on 22 September 1952. We were further advised that on 22 September 1952 Huffman had completed his full term with the usual allowance off for good time.

11 February 1953. Petition for rehearing in habeas corpus denied by Supreme Court and case dismissed as moot.

24 February 1953. Huffman petitions for rehearing of order dismissing habeas corpus case as moot.

4 March 1953. Petition denied.

30 December 1954. Four years after judgment and sentence Huffman as defendant in original criminal case files in circuit court of Lincoln county supplemental motion to vacate three-year sentence.

21 March 1955. Motion to vacate sentence denied by circuit court.

20 May 1955. Defendant Huffman appeals to Supreme Court from order denying motion to vacate sentence.

In our opinion of 6 December 1952 (197 Or 283, 251 P2d 87) we held that Huffman's petition for a writ of habeas corpus raised questions of violation of constitutional right on which the trial court should have conducted a hearing and, being without knowledge of the fact that Huffman had already been discharged from custody, we remanded the case for further proceedings conformable to our opinion. On receipt of information concerning the release of Huffman we dismissed the proceedings as moot.

In addition to the claims of violation of constitutional right set forth in Huffman's original petition in coram nobis, he seeks to broaden the inquiry by the allegations in his supplemental motion of 30 December 1954. See supra. His contention is, we suspect, unique in the annals of crime. He objects to his release as a prisoner, contending that his term of imprisonment had not expired, and by the affidavit of his attorney, he objects further because the warden, O'Malley, advised that he "would not permit the defendant to re-enter and serve the balance of his sentence." The trial court denied the motion and supplemental motion without hearing, upon the evidence and upon the sole ground that it was without jurisdiction to hear the case.

We turn to the motion in the nature of coram nobis which was filed on 18 December 1952 whereby the present litigation was initiated. The allegations of that motion and of the supporting affidavits are defective in many respects and serious questions as to their sufficiency would have become apparent if they had been considered on their merits. In the interests of fairness, however, we shall not at this point and in

this court discuss the sufficiency of the allegations. The actual events to which the motion relates are the same as those considered in the habeas corpus case, and in the latter case we held that the more adequate allegations therein contained were sufficient to present questions of violation of constitutional right. In view of this peculiar situation we shall assume for the present that the motion also raises constitutional issues sufficient to require a hearing in the circuit court as to the sufficiency of the allegations as a matter of law, and to require a hearing on the merits as to any facts well pleaded, *provided the circuit court has jurisdiction to consider and act upon the motion.*

If the circuit court had heard and determined the motion on the merits, and the defendant had then appealed, a serious question would arise as to whether our law grants any appeal from such an order. *People v. Gersewitz,* 294 NY 163, 61 NE 427; *Pickett's Heirs v. Legerwood,* 7 Peters 114, 8 L ed 638; 2 Am Jur 932, Appeal and Error, § 136. But see, *State ex rel. Emmert v. Hamilton,* 223 Ind 418, 61 NE2d 182, 159 ALR 1279 (right of appeal granted by rule of court under statutory rule-making power); *People ex rel. Courtney v. Green,* 355 Ill 468, 189 NE 500; *People v. Paiva,* 31 Cal2d 503, 190 P2d 604 (Appeal authorized by statute).

In this case, however, the question is not whether the motion and affidavits are properly drawn, nor whether there is sufficient evidence to support the allegations, nor whether the denial of such a motion was within the discretion of the trial court. *People v. Bartindale,* 259 App Div 841, 20 NYS2d 172, 284 NY 681, 30 NE2d 724; *Lyons v. Goldstein,* 290 NY 19, 47 NE2d 425, 429. Here the trial court denied the motion upon the sole ground of want of jurisdiction to hear the evidence. The respondent State of Oregon filed

no brief and made no appearance in this case. The matter was presented and has been considered here on the assumption that the appeal raises the question as to the jurisdiction of the trial court to entertain a motion in the nature of coram nobis. When a trial court erroneously refuses to take jurisdiction, the normal proceeding by which to compel action is by writ of mandamus. In view of the fact that important constitutional questions are involved and that no question has been raised as to the appealability of the order of the trial court, we shall for the purposes of this case only, assume that the order denying the motion on the ground of want of jurisdiction was appealable. No good purpose would be served by dismissing this appeal if the identical question could then be raised by mandamus. Whether orders allowing coram nobis or denying it after hearing on the merits or for want of jurisdiction are appealable is a difficult question which should be decided only after full presentation by adverse parties. In ruling that it was without jurisdiction to entertain the motion it is probable that the trial court was influenced by language employed by this court in the opinion on rehearing in *Huffman v. Alexander,* supra. That case was remanded to the circuit court for trial on 6 December 1952, and a petition for rehearing was filed by the attorney general, in which, for the first time, it was asserted that we had erred ''in permitting a collateral attack on a judgment of a court of criminal jurisdiction by extrinsic evidence in habeas corpus, rather than requiring a direct attack by a motion to vacate the judgment in the nature of coram nobis.'' It will be observed that the contention of the attorney general related to the situation as it existed when we remanded the habeas corpus case to the circuit court for trial. At that time,

and at the time of filing the petition for rehearing on 24 December 1952, neither the attorney general nor this court had been informed that Huffman had been released from custody in September 1952.

While it is true that we reviewed some cases denying the availability of coram nobis under any circumstances, an examination of our opinion will show that we were discussing the use of coram nobis as a substitute or alternative for habeas corpus. In our first opinion we broadly extended, for the benefit of imprisoned persons, the ancient, narrow scope of habeas corpus as a remedy for the violation of constitutional rights when there was no other remedy available, but we did not intimate that habeas corpus was available to any person except one "imprisoned or otherwise restrained of his liberty * * *." ORS 34.310. In the opinion on rehearing we referred to the "drastic narrowing of the scope of relief by motion in the nature of coram nobis." We quoted, as follows, from *State v. Miller,* 161 Kan 210, 166 P2d 680: "We need not say here that under no circumstances is the writ longer available * * *." We made it clear that the question at issue was whether coram nobis would lie when the applicant therefor was in prison and when habeas corpus was an available remedy. We said:

"* * * We should avoid the anomalous situation which arises when, in the same jurisdiction, similar relief is given under coram nobis and under habeas corpus, yet where it is held that relief in the nature of coram nobis is available only when there is no other remedy and that relief in habeas corpus is also available only when there is no other remedy, a situation which exists in a neighboring state. We conclude that the suggested remedy in the nature of coram nobis would not have been adequate, and was not available to plaintiff, and

in any event, that habeas corpus was the appropriate procedure. State v. Turpin, 255 Wis 358, 38 NW2d 495." *Huffman v. Alexander,* 197 Or at 344.

Finally we said:

"* * * *a motion in the nature of coram nobis, if it is available ever or at all, should not be declared to be the sole remedy for the vindication of constitutional right to the exclusion of the ancient writ of habeas corpus.* * * *"* *Huffman v. Alexander,* 197 Or at 338.

In our further discussion we shall, for brevity, employ the term "coram nobis" as including "motions in the nature of coram nobis" except when it becomes necessary to distinguish between the ancient writ and the modern motion which has been substituted therefor.

We will first consider the case of *State v. Rathie,* 101 Or 368, 200 P 790. The defendant in that case was convicted and sentenced to death for the murder of Sheriff Tillman Taylor. *State v. Rathie,* 101 Or 339, 199 P 169 (1921). Defendant was of course in custody. A petition for rehearing was filed and while it was pending defendant "attempted to sue out a writ of error coram nobis in the circuit court" wherein the conviction was had. The circuit court conducted a hearing and dismissed the proceeding in coram nobis. Defendant appealed to the Supreme Court. On 20 September this court denied the petition for rehearing in the main case, 101 Or 366, 200 P 790, and on the same day "affirmed" the order of the circuit court in the proceeding in coram nobis. The record discloses ample grounds for the denial of the appeal from the decision in coram nobis, among others, the fact that there was a failure to file the jurisdictional transcript on appeal. Again, it is far from clear that there was

any violation of constitutional right set forth in the petition which would warrant the employment of either habeas corpus or coram nobis. There was only a flimsy claim of newly discovered evidence. Finally, even if there was an adequate assertion of violation of constitutional right under the modern doctrine, as approved in the main opinion in *Huffman v. Alexander,* the only remedy would now be in habeas corpus. We think the trial court in the Rathie case properly denied the petition for coram nobis, but when this court "affirmed" the lower court, it laid down bad law. The decision has been taken to mean that under no circumstances will coram nobis lie. In *Huffman v. Alexander* we cited the case as an authority to that effect. Further consideration leads us to the conclusion that if *State v. Rathie,* 101 Or 368, stands as an authority for the proposition that a motion in the nature of coram nobis does not under any circumstances lie in this jurisdiction, the decision must be overruled. The decision was the result of confusion on the part of a great judge. He defined a writ of error coram nobis as follows:

> " 'It is a writ of error issued out of a court of competent jurisdiction, directed to the judges of a court of record in which final judgment has been given, and commanding them, in some cases, themselves to examine the record, in others to send it to another court of appellate jurisdiction, therein named, to be examined, in order that some alleged error in the proceedings may be corrected.' "

Obviously the court was thinking of a common-law writ of an appellate nature, "a writ issuing from an appellate court commanding a subordinate court of record to send up * * * the * * * record." Wharton's Criminal Pleading and Practice, Ninth ed, § 770, p 532.

The court relied upon the statute which provides that

"Writs of error and of certiorari in criminal actions are abolished. The only mode of reviewing a judgment or order in a criminal action is that prescribed by this chapter." ORS 138.010.

The writ of error coram nobis as defined in *State v. Rathie* bears no resemblance to the proceeding which was before that court. The definition involved a writ issued out of one court to another court—a typical matter of appellate procedure—but the issue before the court in that case was not whether the Supreme Court should issue a writ directing action by the circuit court. The question before the Supreme Court involved the power of the circuit court to issue the writ or grant the motion, and incidentally, the further question as to whether the denial of relief in the circuit court was an appealable order. The state in its brief contended that no appeal lies from the refusal of the trial court to allow a writ of error coram nobis, and cited two cases in support, to-wit, *Tyler v. Morris,* 34 Am Dec 395, and *Wood v. Colwell,* 34 Pa St 92. But this court ignored that issue, assumed that it had jurisdiction of the appeal, and in form, affirmed the order which it held the circuit court had no power to make. The headnote discloses the misunderstanding of the real issue in the case. We quote:

"Nothing can be brought up for review in an appellate court in a criminal proceeding by a writ of error coram nobis, all writs of error and certiorari being abolished by Section 1603, Or. L." Headnote 2, *State v. Rathie,* 101 Or 368, 200 P 790.

This would indicate perhaps that the court was merely holding that the order of the circuit court was not appealable. But it certainly indicates a misapprehen-

sion of the issue. The defendant didn't attempt to bring up anything for review "by a writ of coram nobis." He brought the writ in the circuit court and merely attempted to appeal from an adverse decision. As said in *State v. Turpin,* 255 Wis 358, 38 NW2d 495:

"A writ of error coram nobis is a common-law remedy afforded on application to the trial court for the commission of error of fact not appearing on the record. It is not an appellate writ since it goes to the court that tried the case."

On reconsideration, we have concluded that we cannot rely upon *State v. Rathie* as an authority. It neither authorizes nor denies the use of coram nobis *in the circuit court* wherein the conviction was had, when used for the purpose of setting aside a conviction obtained in violation of constitutional right. In *State v. Rathie* and in *Huffman v. Alexander* no reference was made to the case of *Ex parte Tice,* 32 Or 179, 49 P 1038. The obvious reason for the omission is that neither digests nor headnotes disclose that anything was said in that case concerning coram nobis. The statute abolishing writs of error in criminal cases was enacted in 1864. *Ex parte Tice* was decided in 1897. From it we quote:

"* * * In a note to Ex parte Crouch, 20 Central Law Journal, 169 (112 U.S. 178, 5 Sup. Ct. 96), it is said: 'The rule is that if the error by reason of which it is sought to overthrow the judgment is not of such a character as renders it absolutely void, the defendant imprisoned thereunder will not be relieved on habeas corpus, but will be driven to seek his remedy in a direct proceeding, by appeal, writ of error, or otherwise, to set aside the same, either in the court in which it was rendered, or in a court having jurisdiction to review the proceedings of such court. If the error be an error of fact, he cannot bring habeas corpus,

but must resort to a writ of error coram nobis in the court which rendered the judgment.' See the great array of authorities collated in support of this note. * * *''

It is obvious that the court did not then consider that the 1864 statute, now ORS 138.010, had abolished the right to apply to the convicting court for relief in the nature of coram nobis.

Insofar as the opinion on rehearing in *Huffman v. Alexander,* supra, may be thought to intimate that the remedy by motion in the nature of coram nobis can never be used under any circumstances, that opinion must be deemed modified to conform to our decision here. We of course do not withdraw from our ruling that coram nobis will not lie where there is any other available remedy, including habeas corpus.

We now proceed to a consideration of the question at issue, a question which is not controlled by the Rathie decision.

It is contended that the convicting trial court has jurisdiction to entertain a motion in the nature of coram nobis after the time has expired for the filing of a motion for a new trial or for an appeal. The suggested procedure wherever employed is now one of extremely narrow scope. The motion which is the successor to the ancient writ came into common use in cases in which constitutional rights had been violated and when there was no other remedy available. The stages in the development of the remedy in New York are well set forth in the work by Eli Frank on Coram Nobis, page 16, et seq. As late as 1941 the New York Court of Appeals said:

''* * * In no case has a writ of habeas corpus been sustained by this court where imprisonment is under a final judgment of imprisonment by a

court having jurisdiction of the person of the accused and general jurisdiction of criminal offenses. * * *" *People v. Martin,* 286 NY 27, 35 NE2d 636.

In view of the narrow scope of habeas corpus under the early statutes and decisions, it was inevitable that some remedy should have been adopted for the relief of persons who had suffered conviction in violation of constitutional right but who had no remedy in habeas corpus. Coram nobis thus gained a foothold and was employed, even in cases in which the defendant was in prison because habeas corpus was not then available if the sentencing court had acquired jurisdiction over person and subject matter, extrinsic evidence of violation of constitutional right not being admissible.

In New York and in many other states the motion in the nature of coram nobis was recognized as a common-law remedy but, as other statutory remedies were made available, the scope of coram nobis became correspondingly more limited. So too the modern judicial expansion of the writ of habeas corpus under the influence and pressure of the United States Supreme Court has further narrowed the area within which the remedy of coram nobis is employed or required. *Huffman v. Alexander,* supra. The rule is now generally recognized that coram nobis is not available when there is any other remedy. *Sanders v. State,* 85 Ind 318, 44 Am Rep 29; *Quinn v. State,* 209 Ind 316, 198 NE 70; *Obie v. State,* 231 Ind 142, 106 NE 452; *People v. Adamson,* 34 Cal2d 320, 210 P2d 13; *People v. Coyle,* 88 Cal App2d 967, 200 P2d 546; *People v. Smith,* 120 Cal App2d 531, 261 P2d 306; *Stephens v. State,* 36 Ala App 57, 52 So2d 169; *Randall v. Whitman,* 88 Ga App 803, 78 SE2d 78; *Merrifield v. Commonwealth,* Ky (1955), 283 SW2d 214; *State v. Turpin,*

255 Wis 358, 38 NW2d 495; *Jenkins v. State,* 223 Ark 245, 265 SW2d 512; *Ex parte Hawk,* 321 US 114, 88 L ed 572.

Since there now exists in Oregon the right by one restrained of his liberty to raise questions of constitutional right by habeas corpus, a remedy grounded in the constitution, it follows, under authorities cited supra, that coram nobis will not lie when habeas corpus provides a remedy. It remains to be determined whether in this state there is a residuum of common-law power to grant relief from a conviction obtained in violation of constitutional right by means of a motion in the nature of coram nobis when the moving defendant is not in custody and when therefore habeas corpus is not available. ORS 34.310.

The problem must be approached in the light of the progressive development of the Due Process Clause by the Supreme Court of the United States. In many cases it has been established that it is the duty of every state to provide corrective judicial process for the relief of persons convicted and imprisoned without due process of law. *Mooney v. Holohan,* 294 US 103, 79 L ed 791.

Again, it is said:

"* * * A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing Counsel for an accused who is unable to obtain Counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. * * *" *Johnson v. Zerbst,* 304 US 458, 82 L ed 1461, 1468.

The duty of the states to provide opportunity for an inquiry into the intrinsic fairness of a criminal process,

even though it appears proper on the surface, is strongly asserted in *Carter v. Illinois,* 329 US 173, 91 L ed 172. The coram nobis type procedure was recognized as appropriate for that purpose.

In *Dowd v. United States,* 340 US 206, 95 L ed 215, defendant had been denied the right of appeal. He then brought habeas corpus in the United States District Court, having first exhausted his state remedies of coram nobis, habeas corpus and "delayed appeal". The United States Supreme Court nevertheless remanded the case to the state court, with the mildly phrased command that "Indiana may find it possible to provide the appellate review to which respondent is entitled." Failing this he was to be discharged. See also *Malinski v. New York,* 324 US 401, 89 L ed 1029 (1944); *Powell v. Alabama,* 287 US 45, 77 L ed 158; *Frank v. Mangum,* 237 US 309, 59 L ed 969. The cases cited have related to the writ of habeas corpus, but they certainly hold that a conviction may be void for want of due process, and it is argued that it would be equally void whether defendant was in custody or not—whether habeas corpus would lie or not.

In *Hysler v. Florida,* 315 US 411, 86 L ed 932, defendant had been convicted of murder in the state court, and the state Supreme Court had affirmed. Since the case had been considered on appeal, the defendant, who desired to bring coram nobis in the trial court, applied to the state Supreme Court for leave to file the motion below. The basis for the motion was violation of constitutional right at the main trial. The petition for leave to bring coram nobis was filed more than four years after his conviction. The Supreme Court of Florida denied the petition and the case went to the Supreme Court of the United States on certiorari. Con-

cerning coram nobis, the Supreme Court, by Justice Frankfurter, said:

"* * * This common law writ, in its local adaptation, is Florida's response to the requirements of Mooney v. Holohan, 294 US 103, 79 L ed 791, 55 S Ct 340, 98 ALR 406, for the judicial correction of a wrong committed in the administration of criminal justice and resulting in the deprivation of life or liberty without due process. * * * In brief, a person in Florida who claims that his incarceration is due to 'failure to observe that fundamental fairness essential to the very concept of justice,' Lisenba v. California, supra (314 US at p. 236, ante, 179, 62 S Ct 280), even after his sentence has been duly affirmed by the highest court of the State, has full opportunity to have a jury pass on such a claim provided he first makes an adequate showing of the substantiality of his claim to the satisfaction of the Supreme Court of Florida. The decisions of that Court show that a naked allegation that a constitutional right has been invaded is not sufficient. A petitioner must 'make a full disclosure of the specific facts relied on,' and not merely his conclusions 'as to the nature and effect of such facts.' The proof must enable the appellate court to 'ascertain whether, under settled principles pertaining to such writ, the facts alleged would afford, at least prima facie, just ground for an application to the lower court for a writ of error coram nobis.' Washington v. State, 92 Fla 740, 749, 110 So 259; see Skipper v. Schumacher, 124 Fla 384, 405-408, 169 So 58; Skipper v. State, 127 Fla 553-555, 173 So 692. The latest formulation by the Florida Supreme Court of its function in considering an application for leave to apply to the trial court for a writ of error coram nobis is found in McCall v. State, 136 Fla 349, 350, 186 So 803 (1939): 'In the exercise of its discretion in matters of this sort the court should look to the reasonableness of the allegations of the petition and to the

existence of the probability of the truth thereof. This duty we have met and we are convinced that to grant the petition would be no less than a trifling with justice.'

"Such a state procedure of course meets the requirements of the Due Process Clause. \* \* \*

"\* \* \* it remains to consider whether in refusing him relief the Supreme Court of Florida denied a proper appeal to its corrective process for protecting a right guaranteed by the Fourteenth Amendment.

"Hysler's claim before the Supreme Court of Florida was that Baker repudiated his testimony insofar as it implicated Hysler and that he now named another man as the instigator of the crime. Considering the fact that this repudiation came four years after leaden-footed justice had reached the end of the familiar trail of dilatory procedure, and that Baker now pointed to an instigator who was dead, the Supreme Court of Florida had every right and the plain duty to scrutinize this repudiation with a critical eye, in the light of its familiarity with the facts of this crime as they had been adduced in three trials, the voluminous records of which had been before that Court."

The court considered the showing made, and found that the Florida Supreme Court has "deemed the petitioner's claim without substantial foundation" and held that the finding of insubstantiality was justified. Finally the court said:

"The state's security in the just administration of its criminal law must largely rest upon the competence of its trial courts. But that does not bar the state Supreme Court from exercising the vigilance of a hardheaded consideration of appeals to it for upsetting a conviction. That in the course of four years witnesses die or disappear, that memories fade, that a sense of responsibility may become attenuated, that repudiations and new in-

criminations like Baker's on the eve of execution are not unfamiliar as a means of relieving others or as an irrational hope for self—these of course are not valid considerations for relaxing the protection of Constitutional rights. But they are relevant in exercising a hardy judgment in order to determine whether such a belated disclosure springs from the impulse for truth-telling or is the product of self-delusion or artifice prompted by the instinct of self-preservation.

"Our ultimate inquiry is whether the State of Florida has denied to the petitioner the protection of the Due Process Clause. The record does not permit the conclusion that Florida has deprived him of his Constitutional rights."

This case marks not only the duty of state courts under the Due Process Clause, but also the limits of that duty. Those limits are further illustrated in the following cases: *People v. Smith,* supra, 120 Cal App2d 531, 261 P2d 306; *People v. Adamson,* supra, 34 Cal 2d 320, 210 P2d 13; *People ex Rel Courtney v. Green,* 355 Ill 468, 189 NE 500; *People v. Stapleton,* 293 P2d 793; *People v. Shorts,* 32 Cal2d 502, 197 P2d 330; *Gordon v. United States,* 216 F 495.

The right to proceed by motion in the nature of coram nobis was recognized in the federal courts prior to the adoption by Congress of the post-conviction procedure statute, USCA 2255 (1948). *Robinson v. Johnston, Warden,* 118 F2d 998 (CCA 9th) 1941; *Waldron v. United States,* 146 F2d 145. The last-cited cases were based on comments made in *United States v. Mayer,* 235 US 129, 59 L ed 129, wherein Justice Hughes left open the question whether United States district courts could exercise a "correctional jurisdiction at subsequent terms analogous to that exercised at common-law writs of error coram nobis." The court

recognized the right of common-law courts to exercise such jurisdiction, but expressed some doubt as to the "power of federal district courts of statutory and limited jurisdiction" to do so. The court referred to the policy of the law that litigation be finally terminated.

New York is one of the states which recognized coram nobis as a common-law remedy for violation of constitutional right. There was for many years no statutory basis for its employment. In the leading case of *Lyons v. Goldstein*, 290 NY 19, 47 NE2d 425 (1943), the question was "whether the tribunal before which the application was made has power, under any circumstances, to hear and determine an application to reopen a judgment of conviction which is based upon fraud and misrepresentation after the judgment has been entered and sentence has been imposed and the defendant has commenced his term of imprisonment." The application for coram nobis was made five years after sentence. It was argued, as has been suggested here, that the legislature had by statute denied jurisdiction in such cases. The New York statute, Code of Criminal Procedure, § 337, was substantially identical to our statute, ORS 135.850. It provided that " * * * 'The court may in its discretion, at any time before judgment upon a plea of guilty, permit it to be withdrawn, and a plea of not guilty substituted.' " The court held that the statutes must be construed "in such a way, if possible, as to avoid their being declared unconstitutional." It held that the statute was not intended to prohibit the withdrawal of a plea of guilty after judgment under the circumstances of the case. The court then said that if the statute were construed to exclude the court from jurisdiction in such cases the

statute would be unconstitutional. Finally the court said:

> "The inherent power of a court to set aside its judgment which was procured by fraud and misrepresentation cannot be doubted. Furman v. Furman, 153 N.Y. 309, 47 N.E. 577, 60 Am.St.Rep. 629; Matter of Holden, 271 N.Y. 212, 2 N.E.2d 631. No logical distinction can be made between such power over judgments in civil cases and such power over judgments in criminal cases. There is nothing unique about a judgment or its execution in criminal cases which excepts it from the rules applicable to judgments generally and the inherent powers of the courts with reference to them. The power was exercised in criminal cases at common law through the writ of error coram nobis. Robinson v. Johnston, 9 Cir., 118 F.2d 998; United States v. Mayer, 235 U.S. 55, 67, 35 S.Ct. 16, 59 L.Ed. 129. If the judgment may be reviewed and set aside on the ground that it was procured by fraud, no reason presents itself why the court may not then permit the withdrawal of a plea of guilty because the record is then the same as if no judgment had ever been rendered. Indeed, it is settled that to deny a person an opportunity to be heard on proof that he was defrauded or coerced into pleading guilty to a crime would impair a constitutional right. Walker v. Johnston, supra; Waley v. Johnston, supra. It would be an extraordinary reversal of all precedent to deny to a competent tribunal power over its own judgments in either civil or criminal cases. "* * * It is sufficient to say that the overwhelming weight of authority upholds his contention that inherent jurisdiction exists in the court to entertain an application such as the intervenor here seeks to present."

The court also held that executive clemency presents no such relief as that to which the petitioner was entitled. In this connection we refer to *New York ex Rel Whitman v. Wilson,* 318 US 688, 87 L ed 1083, where

the United States Supreme Court commented upon *Lyons v. Goldstein,* supra, and observed that the opinion in that case rests in part on the requirement of the Due Process Clause. And see opinion of Frankfurter, J.

In *People v. Gersewitz,* 294 NY 163, 61 NE2d 427, the defendant made a motion, based on constitutional grounds, to set aside his plea of guilty and vacate a judgment imposed thereon. The motion was denied and defendant appealed. The appellate division held that the order was not appealable and the Court of Appeals, by Lehman, Chief Judge, affirmed. Concerning coram nobis in the trial court, the following was said:

"\* \* \* The Court has nonetheless recognized, at the same time, that courts have always asserted and exercised authority which, though perhaps not expressly established by statute, is 'based upon the inherent right and duty of the courts to protect the citizen in his constitutional prerogatives, and to prevent oppression or persecution.' 'It is a power,' the court said, 'which the legislature can neither curtail nor abolish, and, to the extent that legislative enactments are designed to effect either of these ends, they are unconstitutional' People v. Glen, 173 N.Y. 395, 400, 66 N.E. 112, 114. We have sanctioned the exercise of such a power by a court to correct its own record or to set aside an order or judgment which was induced by fraud or procurred in violation of a constitutional right of a party. Perhaps that power can have no broader scope."

The court held that unlike a proceeding in habeas corpus, the motion was not a special proceeding, but is "made in the criminal action" and would be appealable only if authority could be found in the Code of Criminal Procedure. No such authority was found.

The power of the New York courts in coram nobis and the limitations thereon are further set forth in *Matter of Hogan v. Court of General Sessions,* 296 NY 1, 68 NE 849.

In *People v. Richetti,* 302 NY 290, 97 NE2d 908, the defendant filed a "coram nobis type" application, asserting violation of constitutional rights at the trial in which he was convicted. The court emphasized the requirements of due process in such proceedings, as follows:

> "Fundamental concepts of due process, decisions of the United States Supreme Court and of our own court, and the very nature of the coram nobis type of relief—all demand a trial of such sworn assertions. The possibility, or probability, that such trials will be numerous, is no answer at all, and will not be further noticed herein. Likewise, as to the fact that defendant is a convict, and the opposing affiants court officers. Defendant has been denied his day in court, and we must see that he has it, be he right or wrong, truthful or lying, good citizen or bad. * * *"

There was a strong dissent which forcibly presents the possibility of abuse in the application of the remedy.

We next consider the case of *Anderson v. Buchanan,* 292 Ky 810, 168 SW2d 48. Defendant was convicted of murder and sentenced to death. On appeal the judgment was affirmed. He then brought several proceedings in the district court, among them, coram nobis. The claim was based on the use of perjured testimony at his trial. The court recognized that the mere fact that there was perjured testimony had been held insufficient in the absence of connivance therein by the

prosecuting officers. Nevertheless the Kentucky court overruled earlier decisions and said:

"We are deeply sensible of the need for ending litigation of every kind, particularly of criminal prosecutions, as early as is consistent with right, and that no one should be permitted to have de novo trial after trial ad infinitum; likewise, we realize that with little difficulty one whose life or liberty is at stake may fabricate evidence and call it newly discovered, or have a prosecuting witness repudiate his testimony and allege perjury in order to obtain a new trial or perhaps only a reprieve. We recognize that it is a rule in several jurisdictions that a writ of coram nobis will not lie on the ground of newly discovered evidence or alleged false testimony. The reasons assigned for the rule are that the defendant might discover or fabricate evidence which would have been material on the trial and require the courts to try the whole case over again, thereby rendering the validity and stability of judgments too uncertain to comport with sound policy, public convenience and safety. 31 Am.Jur., Judgments, Sec. 804; Annotation 33 A.L.R. 84; 24 C.J.S., Criminal Law, § 1606, p. 149. But in some of those jurisdictions the door has been left open if the evidence is of 'such a conclusive nature as to demonstrate it to be impossible under all circumstances that the judgment was wrong upon the merits.' Humphreys v. State, 129 Wash. 309, 224 P. 937, 940, 33 A.L.R., 78. The rule seems to be one of expediency and loses sight of the power of the courts to protect themselves against imposition. It seems to write in an unwarranted exception and to overlook the real purpose of the writ, which is to revest the court with jurisdiction in an extreme emergency and permit inquiry into the important question of whether the judgment of conviction should be vacated because the defendant was unknowingly deprived of a defense which would have probably disproved his guilt and prevented his conviction, and if that probability be established to

grant the defendant a new trial of the accusation. 31 Am. Jur., Judgments, 812; 24 C.J.S., Criminal Law, § 1606. * * *"

See also, *Jones v. Commonwealth,* 269 Ky 779, 108 SW2d 816; *Howie v. State,* 121 Miss 197, 83 So 158; *People v. Guariglia,* 303 NY 338, 102 NE2d 580.

In *State v. Killigrew,* 202 Ind 397, 174 NE 808, the Supreme Court of Indiana granted the right to coram nobis on basic principles. We quote:

"The writ of error coram nobis is a recognized remedy of our legal procedure. [Citing cases.] The Constitution of Indiana requires that all courts shall be open and that 'every man, for injury done him in his person, property or reputation shall have remedy by due course of law.' The writ coram nobis is a part of our 'due course of law'; the criminal court of Lake county has jurisdiction over the subject-matter of a petition for a writ coram nobis, and the relator is as much entitled to file his petition for a writ coram nobis as he is to file a complaint in a civil action in a court of competent jurisdiction. * * *"

Finally, we quote an excerpt from another opinion of the Supreme Court of Indiana:

"* * * That courts possess inherent powers not derived from any statute is undeniably true. Among these powers are the right to correct their records so as to make them speak the truth, to pass upon the constitutionality of statutes, to prevent the abuse of their authority or process, and to enforce obedience to their mandates. If it were granted that courts possess only such rights and powers as are conferred by statute, they would be mere creatures of the Legislature, and not independent departments of the government. They are not mere creatures of the Legislature, but are coordinate branches of the government and in their

sphere not subject to legislative control.'' Citing cases. *Sanders v. The State,* 85 Ind 318, 329, 44 Am Rep 29.

From a great number of cases supporting motions of the coram nobis type, we have cited only a few, and though many of them invoked applications for relief by persons who were in prison, the principles set forth compel respect and still apply, except when limited, as we have before said, by the development and use of other remedies, including habeas corpus. In general, we adhere to the proposition stated in *Huffman v. Alexander,* supra, that the criminal code plus the right to habeas corpus purports to form a complete code by which relief for violation of constitutional right occurring in connection with a criminal trial may be sought. We are forced to the conclusion, however, that in rare instances cases may arise in which the statutory remedies to which we have referred are not adequate and in which the court must exercise its inherent common-law power if any relief is to be afforded. Whether that power is such that it could not be restrained by legislation, as is held in the New York courts, need not be decided. It is enough that the power at common law exists and that it has not been wholly destroyed though severely limited by the establishment of other adequate remedies.

The remaining question is whether the pending case comes within the area within which the circuit court had jurisdiction to consider and act upon the motion.

The defendant has served his time and is at large. There is no showing that any further governmental action against him is pending or contemplated. There is no reason to believe that his civil rights are directly affected by this conviction, for he has testified to two

previous convictions for felony. See *Huffman v. Alexander*, 197 Or 283 at 326. His case rests on the bare claim that he was convicted in violation of constitutional rights and therefore is entitled to an order allowing him to withdraw his plea of guilty, vacating his sentence, and permitting him to enter a plea of not guilty and be retried upon the original charge after the expiration of five years.

In *United States v. Morgan*, 346 US 502, 98 L ed 248, a defendant had been convicted in a United States district court. He was sentenced to four years imprisonment which he had fully served. Thereafter he was convicted by a New York court on a state charge and was sentenced to a longer term as a second offender because of the prior federal conviction. He filed an application for coram nobis in the federal district court where his first sentence was imposed. He there alleged violation of his constitutional rights "through failure without his competent waiver, to furnish his counsel." The district court treated the proceeding as a motion under 28 USC, § 2255, the post conviction statute, and denied the motion for want of jurisdiction, because that statute, in express terms, refers only to "a prisoner in custody" under sentence of a federal court. The applicant was not in federal custody. The Court of Appeals reversed and the case went to the United States Supreme Court on certiorari. The question for decision was stated thus:

"This review on certiorari requires us to decide whether a United States District Court has power to vacate its judgment of conviction and sentence after the expiration of the full term of service."

The court said that proceeding by motion in the nature of coram nobis "is now the accepted American prac-

tice.'' Concerning the nature of the proceeding, whether civil or criminal, the court said:

> ''Such a motion is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding. * * *'' 98 L ed 253.

The court recognized that the federal district courts must find their authority in some statute since they were not common-law courts. Such authority was found in the ''All Writs Section of the Judicial Code'' which authorized the issuance of ''all writs necessary or appropriate in aid of their respective jurisdictions agreeable to the usages and principles of law.'' In emphasizing the limitations on the employment of coram nobis the court said:

> ''Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice. * * *''

In conclusion the court said:

> ''Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected. As the power to remedy an invalid sentence exists, we think, respondent is entitled to an opportunity to attempt to show that this conviction was invalid.''

There was a forceful dissent by Justices Minton, Jackson and Clark, in which the necessity that litigation must come to an end was emphasized.

In *Tinkoff v. United States*, 129 F2d 21 (CCA, 7th) the court conceded that under the decision in *Hysler v. Florida*, supra, a defendant had a right to relief in coram nobis when conviction was obtained by perjured

testimony connived at by the prosecuting officials. But the court said:

> " * * * We are charged with the responsibility of determining whether he has made a showing which would justify its allowance. We are of the view that no such showing has been made. As already stated, no supporting affidavits are presented and there is no disclosure as to how or by whom he could hope to prove the essential allegations of his petition. Moreover, appellant satisfied the judgment by serving the term of imprisonment thereby imposed. Whether this would, as a matter of law, preclude the allowance of the motion, we need not decide. The fact, however, is a circumstance which we may properly take into consideration."

In *State v. Killigrew*, 202 Ind 397, 174 NE 808, the question was whether a defendant who had been convicted and had paid his fine and served his jail sentence was entitled to relief by coram nobis in the convicting court. The Supreme Court of Indiana quoted with approval:

> " 'An erroneous judgment against him is an injury per se, from which the law will intend he is or will be damnified by its continuing against him unreversed. * * * A Judgment on the merits is conclusive between the parties, and, if not by direct, it may be followed by remote consequences actually injurious.' Barthelemy v. People, 2 Hill (N.Y.) 248, 255."

It was held that the trial court should entertain the motion in the nature of coram nobis but there were other grounds for the allowance of the motion in addition to the asserted right to vindication. It was shown that the United States was about to deport the defendant, based on the conviction which he was seeking to set aside.

In *Sanders v. The State,* 85 Ind 318, 44 Am Rep 29, defendant pleaded guilty under extreme duress. He sought remedy by coram nobis. The Supreme Court in upholding his right to such relief, said:

" * * * All men are by our laws entitled to a fair trial, in absolute freedom from restraint and entire liberty from fear of threats and violence. It is almost a mockery to call that a trial, or a judicial hearing, which condemns an accused upon a plea of guilty forced from his reluctant counsel by threats of an angry and excited mob, and interposed because they believed that to proceed with a trial upon a plea of not guilty would result in the hanging of their client by lawless men. A man who makes a promissory note because of fear is entitled to judicial assistance. A will executed under the influence of fear falls before the law. These are small things when compared with life and liberty, and yet in the eyes of the law they are null. If such things are null when procured by fear, or extorted by violence, should not a plea be so, when to have refused it would have been to put in jeopardy the life of the man arraigned upon a charge of felony? * * *"

The court also held that the courts possess inherent power to prevent the abuse of their authority. However, this was a case in which the defendant's substantial rights were involved. He was in custody.

Another case in which coram nobis was declared to be the proper remedy is *United States v. Steese,* 144 F2d 439. The defendant had fully served his sentence imposed by the federal court, but he was in prison under a subsequent New York conviction and had been sentenced to a longer term because of the former conviction in the federal court. He invoked coram nobis to set aside his first conviction in order that he might seek in the New York court a shorter sentence as a first offender only.

In *People v. Green,* 355 Ill 468, 189 NE 500, the only question was whether the trial judge had jurisdiction to set aside judgments of conviction on account of violation of constitutional right at the trial. The issue was presented by original petitions for mandamus filed by the prosecutor to compel the trial judges to expunge from the record the orders which had set aside the judgment of conviction. The state contended that the judgments had been executed and that therefore the trial court was without jurisdiction to set aside the convictions. The Supreme Court of Illinois relying upon *People v. Crooks,* 326 Ill 266, 157 NE 218, held that the general rule to the effect that a court loses jurisdiction when defendant has entered upon the execution of his sentence, is subject to an exception, as follows:

"* * * this rule does not apply where there is any error in fact that could have been corrected at common law by the writ of error coram nobis, or under our statute by motion or petition in writing made at any time within five years after the rendition of the judgment."

The Illinois Supreme Court held that:

"A writ of error coram nobis, or a motion under the statute, is an appropriate remedy in criminal cases as well as civil and lies to set aside a conviction obtained by duress or fraud, or where by some excusable mistake or ignorance of the accused, or without negligence on his part, he has been deprived of a defense which he could have used at his trial, and which, if known by the court, would have prevented conviction. * * *"

It appears from the opinion that the judgment of conviction had been "executed", i.e., that defendants had entered upon the service of the sentence. We do not know whether the sentence had been fully served.

In *People v. Coyle,* 88 Cal App2d 967, 200 P2d 546, defendant brought coram nobis in the convicting court. He was in custody, having been sentenced as an habitual criminal. The trial court denied the application. The appellate court treated the proceeding as civil in nature and entertained an appeal. It thus affirmed the order denying coram nobis. The court took notice of abuses in coram nobis proceedings and strictly limited the scope of inquiry in such cases.

In *Gordon v. United States,* 216 F2d 495 (1954), the court followed *United States v. Morgan,* supra, and held that the United States District Court had power to entertain coram nobis on an application made after the federal sentence had been completely served. But the court explained that defendant was in custody under a sentence of a New York court. We quote:

> "* * * The object of the motion was to have the federal conviction set aside so as to enable defendant to request a shortened sentence from the New York court. * * *"

The Court of Appeals affirmed the District Court which had denied the petition without a hearing.

In *Vales v. United States,* 193 F2d 776, defendant was convicted and thereafter was pardoned. He then filed a petition in the cause, seeking an order expunging the record of the trial. The United States District Court heard the petition and denied it. The United States Circuit Court of Appeals affirmed. The case is unique in that defendant was not in prison and so far as the record shows there was no threat of further governmental action which would be affected by the record of conviction. The case would indicate that the trial court had jurisdiction to consider the case but it is not any authority for the proposition that coram nobis will be used merely to clear one's reputation.

In *United States v. Powell,* 24 F Supp 160, defendant was convicted on several different charges. He brought coram nobis. The District Court considered the validity of the conviction for which defendant was sentenced for the longest term. The petition was denied. The court refused to consider the other charges for which shorter sentences to run concurrently had been imposed. It said, "The writ of error coram nobis is never granted except where substantial rights are involved."

*United States v. Nickerson,* 124 F Supp 35, is another case in which defendant had fully served his sentence yet was allowed to bring coram nobis. But here again the reason for the motion was that defendant was presently imprisoned in New Jersey as a third offender and defendant had a substantial interest in setting aside the federal conviction which would make him eligible for an earlier parole under New Jersey law.

Again, in *Lopez v. United States,* 217 F2d 526 (1955) the defendant brought coram nobis. He was at that time in custody serving four consecutive sentences, one of which he attacked by said proceeding in coram nobis. That sentence he had fully served. The Court of Appeals, 9th Circuit, held that the District Court had jurisdiction to consider the motion on the merits, though because of the other sentence yet unserved, it would afford Lopez no immediate relief from confinement. However, the motion was considered on the merits and denied. In this case we may at least infer that setting aside one conviction might later benefit the defendant by increasing the chance of release or parole.

The cases cited supra clearly indicate that the court which convicts a defendant has jurisdiction to entertain

a motion in the nature of coram nobis upon a proper showing when there is no other remedy and when defendant is still in confinement. The common-law remedy by writ or the modern substitute by motion has been recognized in at least 19 states. It has been most fully developed in New York and California. Certain of the cases cited supra tend to indicate that jurisdiction exists even though defendant is not in custody. Jurisdiction appears to exist based merely on the bare fact that a question of violation of constitutional right has been presented and regardless of any effect which the relief prayed for would have upon any substantial right of the defendant. It will be noted that we referred to the existence of *jurisdiction,* not to the propriety of its exercise. We are satisfied that the convicting court may be justified in exercising its jurisdiction when violation of constitutional right is made to appear in connection with the conviction, if the granting of relief will result in the release of the defendant from imprisonment, assuming of course, that there is no other adequate remedy.

Again, jurisdiction may be exercised in another group of cases in which defendant is no longer serving the sentence imposed, but his substantial rights will be affected by the granting of the relief sought. This group includes cases in which relief if granted would favorably affect his status as a recidivist under statutes imposing heavier sentences because of repeated convictions. Also included are cases in which, although the term of imprisonment has been served, the risk of deportation or of loss of citizenship is involved. In all such cases substantial legal rights are involved and a proper petition filed in a case in which there was no other suitable remedy will receive consideration. Whether a trial court will exercise its juris-

diction in cases in which the granting of the requested relief would have no direct effect upon the defendant's legal position requires consideration of other matters.

The weight of authority supports the proposition that it lies within the sound discretion of the court to determine the "substantiality" of the allegations in the petition for coram nobis. The granting of the writ is not a matter of right, but it is issued only on a showing of cause, and then it is within the discretion of the court whether, on the affidavits presented, it should be allowed. In some jurisdictions coram nobis is still treated as a separate proceeding, civil in nature. In such jurisdictions orders granting or denying relief are treated as appealable, but such orders, if appealable, will be reversed only for abuse of discretion. *Grandbouche v. People,* 104 Colo 175, 89 P2d 577; *Medberry v. People,* 107 Colo 15, 108 P2d 243; *Hailey v. People,* 113 Colo 290, 155 P2d 993; *Tromanhauser v. Municipal Court,* 127 Cal App2d 34, 272 P2d 803; *People v. Muhlenbroich,* 291 P2d 45; *People v. Ayala,* 291 P2d 517; *State v. Turpin,* 255 Wis 358, 38 NW2d 495; *Merrifield v. Commonwealth,* supra (Ky) 283 SW2d 214; *Tinkoff v. United States,* supra, 129 P2d 21. In this connection we again refer to *Hysler v. Florida,* 315 US 411, 86 L ed 932 at 939.

In considering whether a court should exercise its jurisdiction to hear a motion in the nature of coram nobis when the movant has already served his term, and when there is no showing that under state or federal law further penalties or disabilities can be imposed on him as a result of the judgment, we turn to the analogous situation which arises when one whose term of imprisonment has been fully served seeks reversal of the conviction by appeal to a higher court.

In *St. Pierre v. United States,* 319 US 41, 87 L ed 1199, defendant was sentenced to five months imprisonment for contempt of court. The Circuit Court of Appeals affirmed the judgment. After the defendant had fully served his sentence the Supreme Court granted certiorari because a question of constitutional right had been raised. The Supreme Court, however, raised the question whether the controversy had become moot. The government cited a long list of cases supporting the affirmative of that issue. The Supreme Court held that the case was moot because:

"* * * after petitioner's service of his sentence and its expiration, there was no longer a subject matter on which the judgment of this Court could operate. * * * Nor has petitioner shown that under either state or federal law further penalties or disabilities can be imposed on him as a result of the judgment which has now been satisfied. * * *

* * * * *

"Petitioner also suggests that the judgment may impair his credibility as witness in any future legal proceeding. But the moral stigma of a judgment which no longer affects legal rights does not present a case or controversy for appellate review. Since the cause is moot, the writ will be dismissed."

See also, *Fiswick v. United States,* 329 US 211, 91 L ed 196.

In *State v. Cohen,* 45 Nev 266, 201 P 1027, the defendant was convicted and given an indeterminate sentence of one month to one year. After serving one month he brought habeas corpus on the ground that the trial court had no authority to impose indeterminate sentence. The writ was granted and he was released from custody. Thereafter his appeal from the sentence was considered wherein it was claimed that his

substantial rights at the trial had been violated. The court considered cases in which a fine had been imposed and in which the right to appeal was nevertheless recognized "on account of the disgrace attaching to the defendant's good name by reason of the conviction." The court stated that those cases followed the minority rule and would not be followed. We quote:

"Assuming that a decision on the merits would result favorably to appellant, the most that could be determined is that the evidence was insufficient to establish his guilt of the offense charged, or at least that he was illegally convicted by reason of erroneous instructions.

"A reversal of the case by this court on any or all of the errors claimed could afford him no relief from the judgment. He has satisfied that by the term of imprisonment served, and has been discharged from custody. Consequently the controversy between the state and appellant involved in this appeal has been terminated as effectually as through a verdict of not guilty had been rendered. There is nothing material to be accomplished—nothing on which the judgment of this court can act effectively and work an advantage to the appellant. People v. Leavitt, 41 Mich. 470, 2 N.W. 812.

*    *    *    *    *

"* * * we do not perceive how we can revive a dead judgment for the purpose of quieting title to a good reputation. * * *" Citing cases.

Again, in *Hudspeth v. Commonwealth,* 204 Ky 606, 265 SW 18, defendant was sentenced to pay a fine and to be imprisoned. He sought an order directing the entry of a pardon by the governor relieving him of the jail sentence. The state objected on the ground that the pardon had been obtained by fraud and had been revoked. The pardon was held to be void and defendant appealed. The Kentucky Court of Appeals held that

since defendant had fully served his sentence the court would not consume its time in dealing with a case which had become moot. See exhaustive note, 87 L ed 1201-1217.

It is difficult to find any real distinction between cases in which (1) the trial court is considering the propriety of setting aside a conviction pursuant to a motion for coram nobis when the defendant has fully served his sentence and (2) cases in which an appellate court dismisses an appeal from a conviction because the defendant has fully served his sentence, especially when questions of constitutional right are involved in the appeal. *St. Pierre v. United States,* supra. We find in the latter group of cases some support for the proposition that the trial judge, though he may perhaps have jurisdiction in coram nobis when the sentence has been fully served, yet in the exercise of that jurisdiction he may consider the fact that petitioner has not shown "that under either state or federal law further penalties or disabilities can be imposed upon him as a result of the judgment which has * * * been satisfied." *St. Pierre v. United States,* supra.

In many instances involving great constitutional issues the difficult task of the judiciary is to weigh competing and apparently conflicting rights and interests of the individual and of the state, and to put the scales in balance, harmonizing so far as possible the rights and duties of each. Such a problem is now before us. On the one hand we note the immense extension throughout the United States of the opportunities afforded by habeas corpus and coram nobis to convicted persons to challenge judicial action if it appears to violate the fundamental rights of the individual. On the other hand, the books and judicial records are full of proof of the disgraceful abuse by convicts of the rights which

the law has extended to them. The courts have repeatedly cried out against these abuses by the many, of the remedies which must be preserved for the protection of the few who have actually suffered wrong by the miscarriage of essential justice. The practical administration of justice requires as never before that criminal trials must be brought to an end. The vacating of judgments long after evidence has been lost, witnesses have died or memories have failed, in itself involves grave danger of a miscarriage of justice.

We have recognized the power and jurisdiction of trial courts, in rare and extraordinary cases, to reexamine by coram nobis the validity of judicial processes which have resulted in convictions long since imposed. We do not propose to open the gates to a flood of litigation which will clog the dockets of the courts, as has resulted from our extension of the scope of habeas corpus.

Here the trial court denied the motions for coram nobis, solely on the ground of want of jurisdiction. It has not considered the sufficiency or definiteness of the allegations in the motions. It has not determined whether they merit an order requiring the prosecution to answer; there has been no hearing on the merits if one is required. In this posture of the case we must remand it to the trial court with direction to exercise its jurisdiction, but we express no opinion as to how jurisdiction should be exercised in the particular case. Coram nobis is directed to the trial court, not to us. The issue presented being completely new to this jurisdiction, we have, however, deemed it necessary to set forth the guiding rules which must control the exercise of jurisdiction in such cases. We have already held that coram nobis will not lie if there is any other adequate remedy, including habeas corpus.

It has occasionally been said that the right to bring coram nobis is "without limitation of time." This is true in the sense that the right is not limited by statutes of limitation prescribing the times within which motions for new trials or appeals must be taken. It does not mean that it is beyond the power of the court to consider the effect of negligent failure to ascertain the facts or to seek relief by the use of the usual statutory remedies or to proceed with due diligence when it is possible so to proceed. *Huffman v. Alexander,* 197 Or at 329 and 342; *People v. Lumbley,* 8 Cal2d 752, 68 P2d 354; *People v. Verson,* 9 Cal App2d 138, 49 P2d 326; *People v. Gilbert,* 25 Cal2d 422, 154 P2d 657; *People v. Kelly,* 35 Cal App2d 571, 96 P2d 372; *People v. Muhlenbroich,* supra, 291 P2d 45; *People v. Martinez,* 88 Cal App2d 767, 199 P2d 375; *People v. Coyle,* 88 Cal App2d 967, 200 P2d 546; *People v. Smith,* 120 Cal App2d 531, 261 P2d 306; *Anderson v. Buchanan,* 292 Ky 810, 168 SW2d 48; *People v. Adamson,* 34 Cal2d 320, 210 P2d 13; *Irwin v. State,* 220 Ind 228, 41 NE2d 809; *People v. Mitchell,* 129 Cal App2d 711, 277 P2d 861, certiorari denied 75 Sup Ct 894; *People v. Stonom,* 293 P2d 807; *People v. Langford,* 134 NYS2d 712; *United States v. McNair,* 18 FRD 417; 24 CJS 153, Criminal Law, § 1606(3).

In conclusion we call attention to the difference between the allegations contained in the first motion for coram nobis and those found in the supplemental motion. The first motion dealt in a general way with the issues considered in the first opinion in *Huffman v. Alexander.* It is with reference to that motion that the trial court will exercise its jurisdiction. The grounds specified in the supplemental motion require no consideration by the trial court. The habeas corpus

case was dismissed as moot. That decision is final. Whether defendant was released before the expiration of his full sentence or not, he is at large, and his full term of imprisonment has long since expired. His rights, if any, depend on the outcome of the motion for coram nobis filed on 18 December 1952 after Huffman had been released from the penitentiary, which motion defendant allowed to slumber for more than two years. It was finally denied on 21 March 1955.

The original motion is remanded to the trial court which is directed to assume jurisdiction thereof, determine the sufficiency of the allegations therein, and if found sufficient in law, to consider and decide the matter upon the merits. If issues of fact arise, the decision is for the court, not for a jury. The practice in Florida of submitting the issues to a jury is not generally followed, nor is it required.

Mr. Justice LATOURETTE concurs in the result.

TOOZE, J., specially concurring.

I concur in the result reached in the majority opinion. However, I cannot agree with some of the limitations which the majority apparently seeks to place upon the use of a proceeding in the nature of coram nobis.

In *Huffman v. Alexander,* 197 Or 283, 351, 251 P2d 87, 253 P2d 289, 298, I wrote a specially concurring opinion in which I took the position (contrary to that taken by the majority in that case) that a trial court had the inherent power to act in a proceeding commonly designated as one in the nature of coram nobis to correct its own record or to set aside an order or judgment which was induced by fraud upon the court or procured in violation of a constitutional right of a party. I suggested that this inherent power of the

court to correct its own mistakes (errors which inhere in and render a judgment void, rather than merely voidable), to inquire into frauds perpetrated upon it, and to protect the citizen in his constitutional prerogatives and prevent oppression or persecution could not be curtailed or abolished by legislative act or failure to act. Even this court has no right to interfere with it. *Sanders v. The State,* 85 Ind 318, 329, 44 Am Rep 29; *People v. Gersewitz,* 294 NY 163, 167, 61 NE2d 427.

It is an inherent power necessary not only to the protection of an individual's constitutional rights, but also to the protection of the court's own integrity. In other words, it is a power in which not only an individual may have an interest, but also one in which the court itself has a very vital interest for its own benefit. In my opinion, it is immaterial what legal machinery is employed to invite the court's attention to the fraud perpetrated upon it, or to the matters resulting in an unconstitutional and void conviction of an individual for crime. I quote from what I said in *Huffman v. Alexander,* supra:

"However, as I interpret the opinion [majority], the majority would deny the inherent power of a trial court to consider a motion in the nature of coram nobis for the correction of an erroneous judgment of conviction. With this I cannot agree. A motion in the nature of coram nobis is, to all intents and purposes, a delayed motion for a new trial. It is filed in the court where the conviction occurred, and after the time for filing a motion for a new trial and for appeal has expired under the criminal code. It is designed to protect the citizen in his rights, constitutional or otherwise, and to prevent oppression or persecution. It does not supersede the remedy by habeas corpus, nor does it conflict with it. In some respects it might be considered a concurrent remedy, and in others

a superior remedy. *It is a proceeding in the original court and criminal case* and is addressed directly to the court that presumably has a better opportunity of securing first-hand knowledge of what occurred prior to and upon conviction than any other court; whereas, habeas corpus, if brought by a prisoner in the state penitentiary, must be filed in the circuit court for Marion county before a judge who may be a stranger to the record. In some cases it may be that habeas corpus would be the more effective remedy, but that is beside the point.

"As authority for the proposition that a proceeding in the nature of coram nobis is not recognized in this state, the majority invites attention to State v. Rathie et al., 101 Or 368, 369, 200 P 790. I do not so interpret that opinion, but if it does so hold, I would expressly overrule it." (Italics supplied.)

It is my opinion that inasmuch as consideration of such a proceeding is within the inherent power of the court, it is manifest that the exercise of such power cannot be diminished or restricted by outside considerations such, for example, as the availability of a remedy by habeas corpus. So to restrict the power would be to deny its inherent character. Broadening the field in which habeas corpus may be employed does not in any manner affect inherent powers of a court of justice, this power to correct its own constitutional errors, or any other.

In the instant case the vital question before us is one of jurisdiction of a court, rather than one respecting the rights of an individual, although those rights are involved. We are chiefly concerned with an inherent power of the court and the jurisdiction to exercise it, an inherent power that is as old as our system of jurisprudence itself. In cases such as this

the exercise of this inherent power by a court has usually been invoked by a proceeding which, for convenience, has been designated by appellate courts as one in the nature of coram nobis, but the name given it is unimportant. It would seem axiomatic that the inherent power itself and its exercise cannot be affected in any manner by the name arbitrarily given the proceeding in which it is invoked. Obviously, the remedy is not that of the ancient Writ of Coram Nobis, although the proceeding may employ some of the features thereof. I wholeheartedly agree with what was said by the Indiana court in *Sanders v. The State,* supra, which is quoted in the majority opinion in this case as follows:

"\* \* \* That courts possess inherent powers not derived from any statute is undeniably true. Among these powers are the right to correct their records so as to make them speak the truth, to pass upon the constitutionality of statutes, to prevent the abuse of their authority or process, and to enforce obedience to their mandates. If it were granted that courts possess only such rights and powers as are conferred by statute, they would be mere creatures of the Legislature, and not independent departments of the government. They are not mere creatures of the Legislature, but are coordinate branches of the government and in their sphere not subject to legislative control." Citing cases.

I am in agreement with the majority that all technical objections that might be raised respecting the right of appeal in this particular case should be disregarded, none having been raised by the parties, and that we should dispose of the matter upon its merits.

The trial court declined to consider Huffman's motion in the nature of coram nobis upon the sole ground that the court did not have jurisdiction to enter-

tain such a proceeding. In *Huffman v. Alexander,* supra (the proceeding in habeas corpus), this court determined that Huffman had made a sufficient showing of a denial of constitutional rights as to entitle him to a hearing upon the merits. His discharge from custody before such hearing could be held terminated that litigation as moot. Unless he has a remedy such as that proposed by his motion filed in the trial court, there is no way that his constitutional rights may be vindicated. That is the sole issue before us, and now squarely presented to us is the question whether or not the circuit court (our court of general jurisdiction) has the inherent power to relieve a party from a judgment of conviction which he says was entered against him through fraud or disregard of his constitutional rights.

The majority has properly repudiated what was said in *State v. Rathie,* 101 Or 368, 200 P 790, and upon which the conclusion in *Huffman v. Alexander,* supra, respecting coram nobis, was largely based, and now holds that a proceeding in the nature of coram nobis is available in this state. That fully answers the problem confronting us. I am fearful that although recognizing the inherent power of the court to entertain a proceeding in the nature of coram nobis, the majority has now attempted to circumscribe unduly its scope and effect by discussing a number of rules and regulations which might affect its operation. In other words, it is my feeling that the majority after acknowledging the existence of the remedy has then sought to build an unnecessary fence around its use. We should be content simply to decide the precise question before us.

Rossman, J., concurs in this opinion.

ROSSMAN, J., specially concurring.

Article I, § 10, Constitution of Oregon, provides:

"* * * every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

The following is ORS 1.160:

"When jurisdiction is, by the constitution or by statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding is not specifically pointed out by the procedural statutes, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the procedural statutes."

The basic problem in this case, according to my belief, is this: Does the complaint disclose that Huffman has suffered an injury "in his person, property, or reputation." If it does not, it is unnecessary to proceed further, but if the complaint reveals an injury of the kind for which the constitution says that "every man shall have remedy", Huffman must be given redress. The courts cannot fail to right a wrong regardless of their attitude toward some procedural provision which a litigant submits as appropriate for his case. ORS 1.160, above quoted, enables the courts of this state to devise a suitable form of procedure for the redress of a wrong whenever they face the situation that "the course of proceeding is not specifically pointed out by the procedural statutes".

Let us now determine whether Huffman has shown that he has sustained an injury within the contemplation of Art I, § 10, Constitution of Oregon. The opinion written by Mr. Justice BRAND projects this question: "Whether a trial court will exercise its jurisdiction

in cases in which the granting of the requested relief would have no direct effect upon the defendant's legal position requires consideration of other matters." In that way his opinion questions whether Huffman has suffered an injury within the purview of Art I, § 10. After stating the question just quoted, Justice BRAND sets forth an analysis of several decisions in which coram nobis was sought after the petitioner had served his sentence and in which the appellate courts refused to strike the sentence from the record without a showing that "further penalties or disabilities can be imposed on him as a result of the judgment which has now been satisfied." The words just quoted were taken from *St. Pierre v. United States*, 319 US 41, 87 L ed 1199. The inference from this portion of the opinion is that the petitioner must show that an immediate substantial penalty or disability will necessarily result from the challenged judgment under which the sentence has been served.

Two previous convictions for felonies are on record against Huffman. If the challenged judgment stands and if Huffman is brought before the criminal bench again, he will, upon conviction, receive a life sentence. ORS 168.031. It is true that a fourth sentence is a necessary prerequisite to imposition of the life sentence and, accordingly, the imminence of such a penalty is conditional and, presumably, remote. Nonetheless, if the petitioner were now facing the fourth sentence, the threatened penalty would be sufficiently substantial to constitute the foundation for coram nobis directed to the third judgment. Since the issue as to whether the constitutionality of that judgment may be attacked is now before us, I believe that we should resolve the issue. It is my belief that if Huffman's averments are true, he has shown that a substantial penalty may

result from the judgment which he challenges. I, therefore, conclude that the complaint (assuming its verity) discloses an injury done him within the purview of Art I, § 10, Constitution of Oregon.

Since the complaint discloses that Huffman is entitled to a remedy, the remainder of our problem should be simple. I believe that ORS 1.160 was enacted for the purpose of enabling the courts to deal effectively with situations such as the one now before us. Mr. Justice BRAND, in seeking the procedural machinery which will enable individuals such as Huffman to secure redress, embraces today's modified form of coram nobis. Mr. Justice TOOZE prefers to resort to the inherent power which all courts possess to award a remedy for an injury inflicted, and to employ in so doing any practical procedural device whether or not it be coram nobis. It is apparent from Mr. Justice BRAND's exhaustive analysis of coram nobis that today's remnant of that common-law procedural device is enmeshed with many pitfalls. Rather than overrule *State v. Rathie,* 101 Or 368, 200 P 790, it might be better to make a fresh start by embracing the power recognized in ORS 1.160 or by doing the same thing, that is, resort to the inherent power of the courts.

I concur in the opinion written by Justice TOOZE.

TOOZE, J., concurs in this opinion.